2008-NMSC-019

181 P.3d 684

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Peter A. VARGAS, Defendant–Respondent.**

**No. 30,131.**

Supreme Court of New Mexico.

March 18, 2008.

Gary K. King, Attorney General, Katherine Zinn, Assistant Attorney General, Santa Fe, NM, for Petitioner.

John Bigelow, Chief Public Defender, Vicki W. Zelle, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

## OPINION

SERNA, Justice.

{1} Defendant Peter Vargas was indicted on charges of trafficking (by possession with intent to distribute), possession of drug paraphernalia, and possession of marijuana. He moved to suppress the evidence against him on the ground that the police officers serving

his arrest warrant had violated the knock-and-announce rule, unlawfully entered his apartment, and violated his constitutional rights. The district court denied the motion, and Defendant appealed. A majority of the Court of Appeals reversed, concluding that the search was unreasonable because no circumstances existed to justify the officers' noncompliance with the knock-and-announce rule. *State v. Vargas*, 2007–NMCA–006, 140 N.M. 864, 149 P.3d 961. Based on the totality of the circumstances, we hold that the search was reasonable because Defendant recognized the officers prior to their knocking and announcing, and therefore the futility exception to the knock-and-announce rule justified the officers' noncompliance.

## I. BACKGROUND

{2} On December 3, 2002, the Las Cruces police dispatch sent two groups of officers to arrest Defendant pursuant to a bench warrant. One group of officers went to a residence listed as Defendant's primary address; Officers Robert Elrick (Elrick) and Frank Flores (Flores) went to an apartment listed as Defendant's secondary address. While Elrick and Flores were en route, other unidentified officers informed them that the case might involve drugs and that Defendant might fight them.

{3} The two officers, both dressed in uniform, positioned themselves on either side of the apartment's front door and waited for a few moments, listening for signs of activity within. After hearing a male voice, Elrick reached over to knock on the door. Before he could knock, however, Defendant opened the door and encountered the officers. Elrick noticed that Defendant matched the general description of the subject of the warrant. Elrick asked, "Hey bro', how ya doing?" In response, Defendant exclaimed, "Oh shit!," and attempted to close the door. The officers reacted immediately by trying to keep the door open. Both Elrick and Flores placed a foot in the doorway to prevent Defendant from closing the door, and Flores said, "Don't close the door, don't close the door."

{4} Despite Flores' command, Defendant persisted in his attempt to shut the officers out of his home. During the struggle at the door, Flores saw Defendant throw something inside the apartment and heard a loud thump as it fell to the floor. The thump sounded like something of significant weight had hit the ground, which caused Flores to become concerned that a weapon might be loose in the apartment and that someone else might be inside who could retrieve it. Both Elrick and Flores later testified that Defendant's actions made them fear for their safety because they believed that if Defendant could close the door, he might arm himself or try to escape.

{5} After a few moments of struggle, Defendant released the door. Flores told Defendant to back up, which he did, and both officers entered the apartment. Once inside the apartment, Flores obtained information from Defendant and confirmed that he was in fact the subject of the warrant, while Elrick searched for the object that Defendant had discarded. Elrick believed that he would find an unsecured weapon, but instead found a Crown Royal bag in the area where Flores had seen Defendant throw the unknown object. Upon picking up the bag, he saw what appeared to be marijuana in the opening and felt a solid, square-shaped item within, which he thought might be a weapon. His subsequent search of the bag produced marijuana, cocaine, and an electronic scale.

{6} Defendant was arrested pursuant to the warrant and subsequently charged with trafficking (by possession with intent to distribute), possession of drug paraphernalia, and possession of marijuana based on the marijuana, cocaine, and scale. He filed a motion to suppress the evidence, claiming that the police had violated his constitutional rights when they did not comply with the knock-and-announce rule and unlawfully entered his apartment. The district court denied the motion, concluding that "[d]ue to the particular facts of this case, it would be inappropriate and unsafe to require the officers to allow the door to be shut and then knock and announce their presence and purpose." Defendant pled guilty to the trafficking charge and reserved his right to appeal the suppression issue. He appealed, and a divided panel of the Court of Appeals re-

versed. *Vargas,* 2007–NMCA–006, 140 N.M. 864, 149 P.3d 961. In dissent, Judge Wechsler argued to uphold the district court's ruling because "the ultimate test, reasonableness, was met in this case." *Id.* ¶ 35 (Wechsler, J., dissenting). He explained that "the officers' conduct was justified" because compliance with the rule "would have protected no legitimate interest of Defendant" and would have unreasonably "require[d] [the] officers to follow futile procedures." *Id.* ¶ 48. We granted certiorari and now reverse the majority, agreeing with Judge Wechsler and holding that the officers in this case were justified in dispensing with the knock-and-announce rule because compliance would have been futile under the circumstances.

## II. STANDARD OF REVIEW AND PRESERVATION

{7} In a recent knock-and-announce case, we explained:

The standard of review for suppression rulings is whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party. We review the district court's purely factual assessments to determine if the fact-finder's conclusion is supported in the record by substantial evidence. Then, while deferring to the [district] court with respect to factual findings and indulging all reasonable inferences in support of the [district] court's decision, we review the constitutional question of the reasonableness of a search and seizure de novo.

*State v. Hand,* 2008–NMSC–014, ¶ 6, 143 N.M. 530, 178 P.3d 165 (quoted authorities omitted).

▪ {8} Defendant contends that the State did not preserve its futility argument at the district court, and thus that we should not rely on it in deciding this case. Under the "right for any reason" doctrine, "we may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below." *State v. Wasson,* 1998–NMCA–087, ¶ 16, 125 N.M. 656, 964 P.2d 820; *see also State v. Gomez,* 2003–NMSC–012, ¶ 7, 133 N.M. 763, 70 P.3d 753. The record shows that the factual allegations underlying the futility argument were both raised and considered below, and therefore, regardless of whether the State preserved its futility argument, we are not precluded from relying on it to uphold the district court's ruling.

## III. THE FUTILITY EXCEPTION JUSTIFIED DISPENSING WITH THE KNOCK–AND–ANNOUNCE RULE

▪ {9} As a threshold matter, we recognize that this Court has routinely applied the knock-and-announce rule in search warrant cases, *see, e.g., id.,* but has never analyzed it in an arrest warrant context. Defendant argues that this case is distinguishable from a search warrant case because search warrants grant absolute authority to enter, whereas arrest warrants do not. However, "an arrest warrant supported by probable cause carries with it limited authority to enter a dwelling in which a suspect lives when there is reason to believe that the suspect is within." *State v. Krout,* 100 N.M. 661, 662, 674 P.2d 1121, 1122 (1984). Based on the authority to enter that attends an arrest warrant, we agree with the Court of Appeals that the knock-and-announce rule applies to the execution of arrest warrants, as well as search warrants. *Vargas,* 2007–NMCA–006, ¶ 11, 140 N.M. 864, 149 P.3d 961; *see also State v. Halpern,* 2001–NMCA–049, ¶ 9, 130 N.M. 694, 30 P.3d 383; *State v. Vargas,* 121 N.M. 316, 319 n. 1, 910 P.2d 950, 953 n. 1 (Ct.App.1995).

▪ {10} In this case, Elrick testified that the person who answered the door and then attempted to prevent Flores and him from entering the apartment matched the description of the person in the arrest warrant. When viewed in the light most favorable to the district court's ruling, that evidence supports the conclusion that the officers had reason to believe that Defendant was inside his apartment, and thus the arrest warrant authorized their entry. *See Krout,* 100 N.M. at 662, 674 P.2d at 1122. With such authority to enter, this case is analogous to other knock-and-announce cases in which officers forced entry pursuant to a search warrant,

and thus the rules espoused in those cases are applicable here.

▇▇▇▇ {11} The knock-and-announce rule requires law enforcement officers serving a warrant to knock and announce their presence and authority and be denied admission prior to forcibly entering closed premises. *State v. Attaway,* 117 N.M. 141, 150, 870 P.2d 103, 112 (1994). The rule is part of the constitutional protections against unreasonable searches and seizures embodied in article II, section 10 of the New Mexico Constitution, *id.,* and the Fourth Amendment to the United States Constitution, *Wilson v. Arkansas,* 514 U.S. 927, 934, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). As such, "[t]he ultimate question" underlying any purported knock-and-announce violation "is whether the search and seizure was reasonable." *Johnson,* 2006–NMSC–049, ¶ 10, 140 N.M. 653, 146 P.3d 298. The reasonableness requirement does "not . . . mandate a rigid rule of announcement." *Wilson,* 514 U.S. at 934, 115 S.Ct. 1914. Instead, compliance is excused if " 'officers have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be . . . futile.' " *State v. Lopez,* 2005–NMSC–018, ¶ 10, 138 N.M. 9, 116 P.3d 80 (quoting *United States v. Banks,* 540 U.S. 31, 36, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003)).

▇▇▇▇ {12} The rules governing our review of the futility exception are the same as those we apply in cases involving exigent circumstances. To decide whether the futility exception applies to a particular search, we look to the totality of the circumstances present at the time of entry from the point of view of a reasonable, well-trained, and prudent police officer to decide whether the officers had a reasonable belief that compliance with the rule would have been futile. *See id.* ¶¶ 10, 12, 138 N.M. 9, 116 P.3d 80. "[W]e measure an officer's reasonable belief under a reasonable suspicion standard," which is not high but "require[s] specific, articulable facts, together with reasonable inferences therefrom, as a basis for concluding that the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement." *Id.* ¶ 10, 138 N.M. 9, 116 P.3d 80 (quoted authority omitted). While specific facts are required to judge the reasonableness of an officer's belief, we will " 'liberally construe[ ]' " that requirement " 'because direct evidence of a suspect's propensity rarely will be available.' " *Id.* ¶ 13, 138 N.M. 9, 116 P.3d 80 (quoting *Attaway,* 117 N.M. at 152, 870 P.2d at 114).

{13} Although an issue of first impression for this Court, courts in other jurisdictions have concluded, under circumstances similar to those we face here, that compliance with the knock-and-announce rule was rendered futile when officers executing a warrant were recognized prior to announcing their presence and authority. The Ninth Circuit Court of Appeals held that officers executing a search warrant were excused from complying with the rule once an occupant opened the door and saw them outside the residence preparing to enter. *United States v. Peterson,* 353 F.3d 1045, 1049 (9th Cir.2003). The *Peterson* court explained that, based upon the occupant's recognition of the officers, requiring them "to announce their presence . . . and wait some further period of time while the occupants reconsidered whether to admit or resist them . . . would amount to mandating a meaningless act." *Id.* ("The Fourth Amendment's touchstone of reasonableness simply does not mandate [such] redundant formalism . . . ." (quoted authority omitted)); *see also Richards v. Wisconsin,* 520 U.S. 385, 396, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) (concluding on different grounds that officers were justified in dispensing with knock-and-announce rule after defendant opened the door, recognized the officers, and immediately attempted to shut them out). Considering the same issue, the Montana Supreme Court held that the futility exception absolved officers from complying with the knock-and-announce rule when an individual inside the place to be searched looked through a window and saw officers preparing to enter. *State v. Ochadleus,* 326 Mont. 441, 110 P.3d 448, 458 (2005). In *Commonwealth v. Davis,* the Pennsylvania Superior Court reached a similar conclusion. 331 Pa.Super. 285, 480 A.2d 1035, 1042 (1984). Police serving a search warrant encountered a man outside the place to be

searched as they were approaching. *Id.* at 1041. Upon seeing the officers, the man fled into the house and locked the door. *Id.* at 1041, 1042. The *Davis* court explained that, "[w]here an occupant sees the police and immediately retreats back into the premises, . . . the duty of the police to knock, announce, and wait is obviated." *Id.* at 1042.

{14} Under the unique facts of this case, we are persuaded that the officers' compliance with the knock-and-announce rule would have been futile because it would not have furthered any of the interests the rule is meant to protect, but instead would have amounted to a meaningless gesture. This Court recognized early in its knock-and-announce jurisprudence that the rule aims to "prevent[ ] the needless destruction of the homeowner's property," to "protect[ ] the sanctity of the home and individual privacy," and to "protect[ ] both the occupant and police from the possible violent response of a startled occupant suddenly confronted with an unannounced entry by an unknown person." *Attaway*, 117 N.M. at 147, 870 P.2d at 109. If Defendant had closed the door, the officers' authority under the arrest warrant would have justified their breaking through to pursue him, *Krout*, 100 N.M. at 662, 674 P.2d at 1122, a situation that likely would have materialized given Defendant's initial attempt to escape the officers. Thus, allowing Defendant to close the door would have increased, rather than diminished, the likelihood of the needless destruction of his property.

{15} "[T]he knock-and-announce rule protects those elements of privacy and dignity that can be destroyed by a sudden entrance." *Hudson v. Michigan*, 547 U.S. 586, 594, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006). The purpose of the rule's privacy guarantee is to give occupants the time necessary to collect themselves and to prepare for the entry of the police before answering the door. *Id.* "The brief interlude between announcement and entry with a warrant may be the opportunity that an individual has to pull on clothes or get out of bed." *Id.* (quoted authority omitted). Compliance with the knock-and-announce rule would not have meaningfully provided Defendant with any additional time

to ready himself for the sudden entry of the police because, at the time that he encountered the officers, he had already collected himself and was leaving his apartment.

{16} Finally, once Defendant had encountered the officers at his doorstep, the likelihood that he would respond violently to their sudden entry in the misapprehension that they were nefarious individuals breaking into his home for some mischievous purpose evaporated. Allowing Defendant to close the door may have given him the time necessary to ready a violent response to the officers' entry—a situation of which the officers were wary given the warning they received that Defendant might fight them. Thus, instead of protecting both Defendant and the officers from violence upon an unannounced entry, compliance with the knock-and-announce rule may have increased the probability that violence would ensue.

{17} In this case, when Defendant opened the door, recognized the officers, and immediately attempted to shut them out, compliance with the knock-and-announce rule was rendered futile. Requiring the officers to allow Defendant to close the door so that they could then knock and announce their presence and authority would have been a "meaningless" and "redundant formalism," *Peterson*, 353 F.3d at 1049, that would not have furthered any of the interests underlying the rule, *see State v. Chandler*, 119 N.M. 727, 735, 895 P.2d 249, 257 (Ct.App.1995) (concluding in dicta that voluntarily opening the door to uniformed officers prior to their announcement of presence and authority satisfies the *rule's* requirements). For those reasons, the futility exception justified the officers' noncompliance, and they did not violate Defendant's constitutional rights when they entered his apartment without first knocking and announcing.

{18} While we conclude that the officers were justified in their actions, we are mindful that our knock-and-announce jurisprudence "shape[s] the parameters of police conduct by placing the constitutional requirement of reasonableness in factual context." *Attaway*, 117 N.M. at 145, 870 P.2d at 107. For that reason, we reiterate that the knock-and-announce rule requires that officers

make known not only their presence, but also their authority under the warrant that they are serving. The failure to announce either presence or authority constitutes a failure to comply with the rule. In this case, when Defendant observed the uniformed officers on his doorstep, the first prong of the announcement requirement was met because he was aware of the officers' presence. The officers did not fulfill the second prong—announcing their authority—until after they entered his home, and thus did not comply with the rule. A declaration as simple as, "We have an arrest warrant," would have sufficed, but the absence thereof violated the rule. Despite the officers' failings, we are willing to uphold the constitutionality of the search and seizure because compliance would have been futile under the totality of the circumstances. Law enforcement officers and the courts that review their actions should remain cognizant of the knock-and-announce rule's two-prong announcement requirement and keep in mind that compliance requires fulfillment of both prongs.

## IV. CONCLUSION

{19} The district court properly denied Defendant's motion to suppress. We reverse the Court of Appeals and remand to the district court for proceedings consistent with this opinion.

{20} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, and PETRA JIMENEZ MAES, RICHARD C. BOSSON, CHARLES W. DANIELS, Justices.