This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                            **NO. 29,387**

**ALVIN BALANDRAN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

James W. Grayson, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Works, L.L.C.
John A. McCall
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

Defendant appeals his convictions, pursuant to a conditional plea, for possession of a firearm by a felon, tampering with evidence, concealing identity, possession of marijuana, and evading an officer. The judgment and sentence was filed on January 23, 2009. Defendant timely appealed on February 23, 2009. As discussed in this opinion, we affirm the denial of Defendant's suppression motion. **FACTUAL SUMMARY**

Officer Mullins was on patrol, traveling on Archuleta Street, when he saw three Hispanic males walking in the other direction. The weather was hot, and two of the three individuals were dressed in heavy flannel jackets and dark clothing. The officer decided to see if the males wanted to talk so he made a U-turn and pulled his vehicle to the side of the road. Officer Mullins asked the individuals where they lived and where they were coming from. He asked for identification and checked for outstanding warrants. When no information came back based on the name and birth date provided by Defendant, he asked Defendant to hand a snack bag that he was holding to his friend. At that point, Defendant took off running. After a chase through the neighborhood, Defendant was apprehended and arrested. It was discovered that Defendant had been previously convicted of a felony and was carrying a firearm when he was apprehended by Officer Mullins. Defendant was charged with

possession of a firearm by a felon, tampering with evidence, concealing identity, evading a police officer, and possession of marijuana.

Defendant filed a motion to suppress, which was denied. Prior to the entry of judgment, Defendant filed a motion to withdraw his plea and to reconsider his suppression motion. Following a hearing, the motions were denied. Defendant was convicted on all charges pursuant to his conditional plea. Defendant appeals, asking that we reverse the denial of his suppression motion.

**DISCUSSION**

**Arguments Made by Defendant in District Court**

In the district court, Defendant moved to suppress "the police stop . . . and any evidence obtained subsequent to that stop." Defendant's argument in that motion was brief. He claimed that he was stopped for "no apparent reason." Defendant argued that there is nothing illegal about dressing in flannel or dressing in black and white checkered clothing, and there is nothing suspicious about three Hispanic males walking together. Defendant argued that he was stopped without any reasonable suspicion to support the stop. A hearing was held before the district court. At the hearing, Defendant argued that wearing clothing inappropriate to the weather and the fact that Defendant is Hispanic did not provide reasonable suspicion to stop Defendant. Defendant claimed that the officer made a show of authority when,

wearing his uniform, he pulled his marked police vehicle over to the side of the road. Finally, Defendant referred to the State's written response to the suppression motion and argued that NMSA 1978, Section 30-22-3 (1963), required Defendant to produce identification on request by the officer, and at that point, Defendant was seized.

Defendant filed a motion to withdraw his plea and a motion to reconsider the suppression motion in which he supplemented his previous motion with additional authority and more information about the description of the officer's uniform and vehicle. In his motion, Defendant alleged that the officer "required" the males to wait while he checked their identification, and alleged that Defendant "decamped in haste" when he sensed that "he was about to become the object of an illegal search." Defendant again argued that the officer made a show of authority by driving a marked vehicle, wearing a uniform, and carrying a weapon. Defendant claimed he had the right to refuse to talk to the officer, and that his manner of dress or association with his companions were not "indicia of criminal behavior." Defendant asserted that the officer made a decision to arrest him before he had engaged in any "arrestable" (sic) conduct.

In both his suppression motion and his motion for reconsideration, Defendant referred to the Fourth and Fourteenth Amendments of the United States Constitution and to Article II, Section 10 of the New Mexico Constitution. *See State v. Gomez*,

1997-NMSC-006, ¶ 22, 122 N.M. 777, 932 P.2d 1 (observing that an issue is preserved by asserting the constitutional principle that provides the protection sought, establishing the essential factual underpinnings, and fairly invoking a ruling by the trial court). Therefore, we address Defendant's arguments under both constitutions.

**Standard of Review**

The district court did not enter findings of fact and conclusions of law. We therefore indulge all reasonable presumptions in favor of the district court's ruling. *See State v. Gonzales*, 1999-NMCA-027, ¶ 15, 126 N.M. 742, 975 P.2d 355. Both the State and Defendant rely somewhat on oral comments made by the district judge, including the assertion that, when Defendant's information proved not to be on file, the officer had a "heightened . . . level of scrutiny" that entitled him to investigate further and to conduct a *Terry*-type search for officer safety, and the district court's assertion that the identification information was "consensually" provided to the officer. We point out that oral comments may be referred to by this Court in order to clarify the district court's ruling. *State v. Roybal*, 2006-NMCA-043, ¶ 9, 139 N.M. 341, 132 P.3d 598. In addition, we may affirm the district court on grounds other than those relied on by the district judge so long as, in doing so, we are not required to look beyond the factual allegations raised and considered in the district court. *State v. Vargas*, 2008-NMSC-019, ¶ 8, 143 N.M. 692, 181 P.3d 684.

5

A motion to suppress involves a mixed question of fact and law. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. It is Defendant's burden to prove that he was improperly seized. *See State v. Garcia*, 2009-NMSC-046, ¶ 15, 147 N.M. 134, 217 P.3d 1032 (explaining the circumstances under which a defendant is considered to have been seized). When deciding whether an encounter has turned into a seizure, we adopt the view of the facts that is most favorable to the district court's decision so long as the facts are supported by substantial evidence. *State v. Vandenberg*, 2003-NMSC-030, ¶ 18, 134 N.M. 566, 81 P.3d 19. We conduct a de novo review in order to determine whether the officer's conduct was reasonable. *Id.* ¶ 19. We will not disturb a district court's ruling on a motion to suppress evidence when it is supported by substantial evidence, unless the law was erroneously applied to the facts. *State v. Walters*, 1997-NMCA-013, ¶ 8, 123 N.M. 88, 934 P.2d 282.

Previously, under the federal constitution, a person was seized if, viewing all of the circumstances surrounding an encounter, a reasonable person would have felt that he or she was not free to leave. *Garcia*, 2009-NMSC-046, ¶ 15. The federal standard has been modified to require physical force by law enforcement officers or submission to an officer's assertion of authority by the defendant. *Id.* The seizure is considered to be discontinued when the person escapes or breaks away. *Id.* ¶ 22.

Under our state constitution, a person is seized if, viewing all of the surrounding circumstances, a reasonable person would not have felt free to leave. *Id.* ¶¶ 15, 35. As discussed in *Walters*, when deciding whether a police-citizen encounter is consensual, we look to the totality of the circumstances surrounding the encounter and determine whether the conduct of the officer would have communicated to an innocent, reasonable individual that he or she was not free to turn down the requests of the officer or was not free to otherwise terminate the encounter. *Walters*, 1997-NMCA-013, ¶ 12. We consider the sequence of the officer's actions and how a reasonable person would perceive the actions, but we do not look at the subjective perceptions of the particular individual involved in the encounter. *Id.* A seizure occurs only when the officer has restrained the individual's liberty through physical force or a show of authority. *Id.* This standard focuses on the nature of the officer's conduct, which allows for consistent application of the standard to each encounter and does not allow for variance of the level of protection based on the suspect's state of mind. *Garcia*, 2009-NMSC-046, ¶ 32.

Our Supreme Court explained in *Garcia* that a reasonable person would conclude that he or she is not free to leave when the individual's freedom of movement is restrained, or when there are facts showing that the individual was accosted or restrained. *Id.* ¶ 37. On appeal, we determine whether the officer's

conduct in asking questions of an individual was such that it would be seen as non-offensive contact if it occurred between two ordinary citizens, whether the officer's conduct went "significantly beyond that accepted in social intercourse." *Id.* ¶ 38 (internal quotation marks and citation omitted). We look at the conduct of the officer, whether there was some physical contact or other interference with the individual, and the physical surroundings during the encounter to determine whether a reasonable person would have felt they could depart. *Id.* ¶ 39. Circumstances that suggest a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the [individual], or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* (internal quotation marks and citation omitted). Significantly, under the state constitution, the Supreme Court has rejected the federal-law concept that an individual's refusal to submit to a show of authority means the individual has not been seized. *Id.* ¶ 35.

**Nature of Encounter**

Defendant views the encounter from its inception as a seizure. He claims that he was seized from the moment that Officer Mullins pulled his vehicle to the side of the road, and the seizure continued when the officer questioned him, asked for identifying information, and ran a warrant check with that information. It is well-

established that law enforcement officers may approach an individual without justification in order to ask questions. *State v. Jason L.*, 2000-NMSC-018, ¶ 14, 129 N.M. 119, 2 P.3d 856; *State v. Gutierrez*, 2008-NMCA-015, ¶ 9, 143 N.M. 522, 177 P.3d 1096. During a police-citizen encounter, however, if an officer by way of physical force or a showing of authority conveys a message that an individual is not free to walk away, the encounter becomes a seizure. *Jason L.*, 2000-NMSC-018, ¶ 15; *Garcia*, 2009-NMSC-046, ¶ 37.

The district court stated that Defendant voluntarily gave the officer his identifying information, and when that information "did not come back" following a warrants check, the officer had the authority to investigate whether Defendant was concealing his identity. The district court also stated that the officer was then entitled to conduct a *Terry*-type search based on officer safety. With no written findings or conclusions from the district court, it is difficult to tell whether or not the court found the entire encounter to be consensual, as suggested by the parties. We address each part of the encounter separately, from the initial approach to the request that Defendant hand his snack bag to his friend, in order to determine whether the encounter was consensual or whether, under the totality of the circumstances, the encounter became a seizure.

**Initial Approach by Officer**

As Officer Mullins was driving, he saw Defendant and two other males walking. It was a hot day with a temperature around 90 degrees, and two of the males were wearing black clothing and heavy flannel jackets, while the third male was wearing shorts and a t-shirt. Officer Mullins thought the fact that two of the males were wearing heavy flannel jackets was odd given the hot weather. He made a U-turn and pulled to the side of the road. He did not engage his siren or lights. The three individuals saw the officer and stopped walking. Officer Mullins testified that he stepped out of his car and did what he normally does in a consensual encounter—he asked if he could talk to the individuals. Officer Mullins asked the males if they lived in the area and asked where they were coming from.

An officer may approach an individual and ask questions without changing the nature of a consensual encounter into a seizure. *Walters*, 1997-NMCA-013, ¶ 18. During the approach and initial questioning by the officer, there is nothing to suggest that the individuals were confined or restrained by the officer's actions. The officer was alone, he did not display a weapon, and the encounter took place in an open area. There is no evidence or testimony to show that the officer made his request using a tone of voice that would cause the three males to believe they were required to comply with the officer's request. At this point, the encounter was consensual under our state

10

constitution. In addition, as there was no use of physical force and no submission to authority by Defendant, there was no seizure under the federal constitution.

**Request for Identification**

When asked where they lived, the three individuals indicated that they lived in a nearby trailer park, but they were unable to remember the space number. When they could not provide specific information about where they lived, the officer asked each of them for identification. The officer testified that they were not required to provide identification. The male dressed in shorts ("third male") gave the officer his identification, while the two males dressed in jackets ("second male" and Defendant) gave the officer their names and dates of birth.

A consensual encounter does not turn into a seizure merely because a police officer asks an individual for identification. *Id.* There is nothing to suggest that the officer demanded the identification or that he made a show of authority in order to convince the individuals to provide identification. In response to inquiries by defense counsel regarding requests for identification, the officer testified that he would not require a person to comply with a request for identification, that it was "perfectly okay" for a person to refuse to provide identification, that he would walk away upon such refusal, and that he had done so in the past. The district court found that the

11

identification information was voluntarily given. *See Roybal*, 2006-NMCA-043, ¶ 9 (allowing reference to oral comments to clarify the district court's ruling).

Defendant agrees that "the mere request for identification and other questioning does not turn a consensual encounter into a seizure." However, Defendant refers to the State's response to the motion to suppress, in which the State argued that Section 30-22-3[1] requires identification to be produced upon request by an officer. Defendant points out that if production of identification is mandatory upon request, and refusal to comply with that request is a crime, the consensual nature of the encounter ceased as soon as Officer Mullins asked Defendant for his identification. In making its argument below, the State relied on *State v. Dawson*, 1999-NMCA-072, 127 N.M. 472, 983 P.2d 421. We believe the State misconstrued the discussion in *Dawson*, and its reliance on the statute and the *Dawson* case is misplaced. Therefore, Defendant's concern that the statute is mandatory in all circumstances is also misplaced.

In *Dawson*, the defendant was illegally parked on university property. *Id.* ¶ 2. When asked by officers for his identification, the defendant repeatedly refused to

---

[1] "Concealing identity consists of concealing one's true name or identity, or disguising oneself with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty or the exercise of his rights under the laws of the United States or of this state." Section 30-22-3.

provide identification. *Id.* ¶¶ 2-4. The State referred to the statement by the *Dawson* Court that "[p]erhaps the Fourth Amendment did not even require reasonable suspicion here, because it is not clear that the officers detained [the d]efendant or restricted his movements in any way while seeking his identity." *Id.* ¶ 21. In making that statement, the *Dawson* Court relied on *Brown v. Texas*, 443 U.S. 47 (1979). In *Brown*, the Supreme Court held that the purpose of a statute similar to Section 30-22-3 was to prevent crime and concluded that unless there was reasonable suspicion to believe the defendant was involved in some other underlying criminal activity, it would violate the Fourth Amendment to require the defendant to produce identification. *Brown*, 443 U.S. at 51-52; *cf. Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008) (construing Section 30-22-3 and explaining that reasonable suspicion of a predicate, underlying crime is necessary to require identification). By relying on *Brown*, the *Dawson* Court affirmed the view that without a reason to believe that a defendant is involved in some criminal activity, an officer cannot require or demand that the defendant produce identification, and the defendant cannot be punished for refusing to provide identification. In other words, compliance with a request for identification is not mandatory under Section 30-22-3 unless there is reasonable suspicion that the individual is engaged in some type of criminal activity other than refusing to provide identification.

13

As we have noted, Officer Mullins did not require or demand Defendant's identification and did not restrict his movement in order to force Defendant to comply with his request for identification. He demonstrated a correct understanding of Section 30-22-3 by stating he would not require compliance with a request for identification but would walk away if his request was refused. Therefore, that request did not change the encounter from a consensual one to a seizure. Under both the federal and state constitutions, this was a permissible encounter at this point.[2]

**Warrant Check**

---

[2] Defendant's reply brief suggests that the State is bound by the argument made below concerning Section 30-22-3, arguing the State cannot change legal positions on appeal. This argument appears to be a contention that judicial estoppel should apply and the encounter be considered a seizure as a matter of law at the point Officer Mullins asked for identification. *See Keith v. Manorcare*, *Inc.*, 2009-NMCA-119, ¶ 37, 147 N.M. 209, 218 P.3d 1257 (stating that judicial estoppel requires that party against who doctrine used successfully assumed a position that was necessarily inconsistent with the position taken later in the proceedings, and indicating that judicial estoppel may be especially applicable when the change in the party's position "prejudices a party who had acquiesced in the former position") (internal quotation marks and citation omitted), *cert. granted by* 2009-NMCERT-010, 147 N.M. 452, 224 P.3d 1257. In this case it is not clear that the State's argument was successful or that the argument was the basis for the court's ruling. The district court said nothing about the statute being mandatory, and made no finding that Defendant had violated any statute. Therefore, judicial estoppel would not apply. Furthermore, as we discuss in this opinion, the entire encounter was consensual, and even if the court erroneously relied on Section 30-22-3, we may affirm if the court's decision was right for any reason. *See Vargas*, 2008-NMSC-019, ¶ 8.

Defendant claims that he was not free to leave while the officer ran checks for warrants using information provided by the three individuals. Defendant argues that he was "part of a group," and while the officer retained possession of the identification card for one of the group, it would not be reasonable for the other two to feel free to leave. Initially, we note that Defendant's argument is not supported by the testimony adduced below because the officer testified that he returned the identification to the first individual after he ran the warrant check on that person. In addition, the cases cited by Defendant in support of this argument do not stand for the proposition that every person in a group is seized when the identity of one person in that group is retained by an officer. *See State v. Morales*, 2008-NMCA-102, ¶ 14, 144 N.M. 537, 189 P.3d 670 (holding that one person's mere proximity to those suspected of criminal activity is not sufficient to provide reason to search that person); *City of Roswell v. Hudson*, 2007-NMCA-034, ¶ 12, 141 N.M. 261, 154 P.3d 76 (describing circumstances when a passenger would not feel free to leave, including a show of authority and demand for identification from police); *State v. Hernandez*, 1997-NMCA-006, ¶ 17, 122 N.M. 809, 932 P.2d 499 (discussing the rule that a defendant may challenge evidence seized from a third party if the search in which the evidence was exposed was an exploitation of the unlawful arrest of the defendant). Defendant cites no authority to support his specific claim that retention of one

15

person's license by police resulted in the seizure of all of that person's companions. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (stating that an appellate court will not consider an issue if no authority is cited in support of the issue, as absent cited authority to support an argument, we assume no such authority exists). Our cases do provide support for the proposition that a driver is not free to leave while an officer is in possession of the driver's license, but we have found no cases in New Mexico supporting Defendant's claim that he was not free to leave while the officer had possession of his companion's identification document.

Defendant also claims that the officer "extended" the identification request into a fishing expedition, that the officer engaged in "protracted" questioning, and conducted an extended "interrogation." Contrary to these arguments, there was no testimony or evidence presented to the district court in support of Defendant's allegations regarding the duration of the encounter or the nature of the questions asked by the officer. "Matters not of record present no issue for review." *State v. Hunter*, 2001-NMCA-078, ¶ 18, 131 N.M. 76, 33 P.3d 296. Counsel's arguments do not qualify as evidence. *State v. Nash*, 2007-NMCA-141, ¶ 9, 142 N.M. 754, 170 P.3d 533.

Defendant argues that running three checks for warrants using Defendant's information constituted a seizure. The initial warrant check using the information

provided by Defendant turned up nothing, so the officer asked Defendant if he was from New Mexico and was told by Defendant that he was from California. When the information was checked in California and it came back as not on file, the officer asked Defendant if he had ever had dealings with law enforcement, to which Defendant responded that he had been given a citation by a sheriff in Doña Ana County. The officer realized that a citation would be in a prior system so he asked dispatch to run the information through the prior system. The information was again not on file. There is nothing to suggest the officer's questions to Defendant were coercive or demanding. Our review of the officer's testimony shows that each follow-up question came up naturally as part of the conversation. When the officer asked Defendant if he was from New Mexico, Defendant voluntarily responded that he was from California, and when the officer asked if Defendant had been involved with law enforcement, Defendant volunteered that he had received a citation from a local sheriff. Each time, the officer changed his procedure for a warrant check based on information volunteered by Defendant.

Again, no testimony was elicited to show how long it took to run Defendant's information three times, or what tone of voice was used by the officer. There was little evidence to show what Defendant was doing while the officer ran the checks for warrants. We do know that, during that time, the second male removed his flannel

17

jacket while Defendant kept his jacket on and continued to eat from a bag of "hot fries." However, there is nothing to suggest that, while the checks were being run, Officer Mullins' conduct or statements conveyed a message that Defendant was required to remain in the vicinity. Based on the evidence presented in the district court, the encounter remained consensual while the officer ran the checks for warrants and was therefore permitted under our state constitution. Furthermore, as there is no showing that physical force was used or that Defendant submitted to the authority of the officer, there was no seizure under the federal constitution.

**Request of Defendant**

The warrant checks on Defendant's companions had revealed that the "second male" was listed as a runaway, and his probation officer had reported that he cut off his ankle bracelet. After running the final unsuccessful check for warrants on Defendant, Officer Mullins said to Defendant, "do me a favor, hand your bag of chips to your friend." At that point, Defendant started to hand his bag to his friend, but instead dropped the bag and took off running.

When Officer Mullins made his request, he was aware that Defendant had a citation that had not come up in the system and that Defendant was associated with the juvenile runaway who had committed the crime of cutting off his ankle bracelet. Based on that information, Officer Mullins planned to pat Defendant down, place him

18

into his vehicle, take him to border patrol for fingerprinting, and run Defendant's fingerprints through the system. Before he was able to execute his plan, Defendant ran away.

Defendant claims that, based on the officer's plan, Defendant was not free to leave, and a reasonable person would not have felt free to leave. As argued by the State, Defendant did not make this argument in the district court. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (stating that, in order to preserve an issue for appeal, the defendant must make a timely objection that specifically apprises the district court of the nature of the claimed error and invokes an intelligent ruling thereon). This Court will not consider issues not raised in the district court unless the issues involve matters of jurisdictional or fundamental error. *State v. Pittman*, 2006-NMCA-006, ¶ 41, 139 N.M. 29, 127 P.3d 1116 (Robinson, J., dissenting).

Even if we were to consider the argument, the officer testified that he had a plan to search and fingerprint Defendant. However, he did not make his plan known to Defendant. Defendant presented no evidence to suggest that the officer said or did anything that conveyed a message that he was considering searching and fingerprinting Defendant. There was no evidence presented to show that the officer's actions would have caused a reasonable person to believe he was being ordered to

remain with the officer or that the officer planned to conduct a pat-down search. *See State v. Ryon*, 2005-NMSC-005, ¶ 33, 137 N.M. 174, 108 P.3d 1032 (noting that an officer's subjective intent is generally not relevant to search and seizure analysis); *see also Jason L.*, 2000-NMSC-018, ¶ 26 (pointing out that an officer's subjective intent is relevant only to extent that the intent was conveyed to the subject of an encounter) (Serna, J., specially concurring). Defendant did not meet his burden of showing that the officer's request was actually a command that converted the situation into a seizure.

Applying the test in *Garcia* to these facts, Defendant's movement was not restrained, and the officer did not make a demand on Defendant. The officer's conduct in making the request did not go "significantly beyond" what would be accepted in social communication and would not be seen as offensive if it had occurred between two ordinary citizens. *Garcia*, 2009-NMSC-046, ¶ 38. Therefore, even if the argument had been properly preserved for appeal, we hold that the officer and Defendant were still engaged in a consensual encounter when the officer made his request. Thus, the encounter was not transformed into a seizure under our state constitution. Under the federal constitution it is even more clear that no seizure occurred; by running away, Defendant did not submit to the officer's request and was not seized as a matter of law. *See id.* ¶ 15.

**CONCLUSION**

Viewing the facts in the light most favorable to the district court's decision, we conclude that, from the time that the officer pulled his car to the side of the road to the time the officer asked Defendant to hand his snack bag to his friend, Defendant and the officer were engaged in a consensual encounter, and that encounter was never transformed into a seizure. The encounter took place during the day in a public area. The officer was alone at the time. He did not draw a weapon or use his lights or siren. Officer Mullins approached Defendant and his companions to conduct a consensual conversation during which the individuals voluntarily provided identification or personal information. There was no evidence presented that the officer made demands at any time, that he detained Defendant for a lengthy period of time, or that he restricted Defendant's movement in any way. Defendant has failed to prove that he was seized during the encounter with Officer Mullins.

The decision of the district court is supported by substantial evidence, and the district court correctly applied the law to the facts when it ruled in favor of the State. We affirm.

**IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

21

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**CELIA FOY CASTILLO, Chief Judge**