# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2021-NMCA-050**

**Filing Date: June 30, 2021**

**No. A-1-CA-37884**

**JOANNE BACHMANN,**

Plaintiff-Appellant,

v.

**REGENTS OF THE UNIVERSITY
OF NEW MEXICO,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Carl J. Butkus, District Judge**

Released for Publication October 12, 2021.

Steven Granberg, Attorney at Law, P.A.
Steven Granberg
Laurel Nesbitt
Albuquerque, NM

for Appellant

Stelzner, Winter, Warburton, Flores, Sanchez & Dawes, P.A.
Quentin Smith
Albuquerque, NM

Garcia Law Group, LLC
Lara White Davis
Bryan C. Garcia
Meghan S. Nicholson
Albuquerque, NM

for Appellee

## OPINION

**YOHALEM, Judge.**

**{1}** Joanne Bachmann appeals from the district court's judgment dismissing her breach of contract and covenant of good faith and fair dealing claims against her former employer, the Regents of the University of New Mexico (UNM).[1] Bachmann's claims arose out of the elimination of her position at the public television station KNME and her layoff in October 2009. Following a bench trial, the district court dismissed all of Bachmann's claims, ruling, in relevant part, that UNM had not breached the terms of Bachmann's implied contract of employment, and that UNM had not breached the covenant of good faith and fair dealing when it failed to reinstate her to her former position eighteen months after her layoff.

**{2}** As to Bachmann's claim of breach of contract, although we conclude that the district court erred when it construed the ambiguous terms of Bachmann's implied contract of employment without considering the evidence introduced at trial of the parties' intent, our analysis does not change the result in this case. We therefore affirm the district court under the right for the wrong reasons doctrine. *See State v. Vargas*, 2008-NMSC-019, ¶ 8, 143 N.M. 692, 181 P.3d 684. We hold that UNM did not breach Bachmann's contract of employment when it failed to reinstate Bachmann to her old position eighteen months after she was laid off.

**{3}** We also agree with the district court that UNM's failure to reinstate Bachmann did not breach the covenant of good faith and fair dealing. When the district court's findings of fact are read together as a whole, as they must be, *see Robey v. Parnell*, 2017-NMCA-038, ¶ 41, 392 P.3d 642 (stating that "findings are sufficient if a fair construction of all of them, taken together, justifies the trial court's judgment" (alteration, internal quotation marks, and citation omitted)), it is apparent that the district court found that there was no bad faith by UNM, no retaliation by UNM for Bachmann's protected communications, and no intent by UNM to harm Bachmann by avoiding the contract terms. Bachmann does not challenge the sufficiency of the evidence supporting the district court's findings of fact. We, therefore, affirm the district court's decision that there was no breach of the covenant of good faith and fair dealing.

**{4}** Finally, given our decision that there was no breach of the covenant of good faith and fair dealing, we do not address UNM's alternative contention that UNM, as a state entity, is immune from a claim for breach of the implied covenant of good faith and fair dealing, pursuant to NMSA 1978, Section 37-1-23(A) (1976).

## I. BACKGROUND

**{5}** We briefly discuss Bachmann's employment with KNME and review the relevant provisions of the UNM Business Policy and Procedures Manual (UNM Employment Manual), which is UNM's implied contract of employment with its employees. We reserve discussion of other facts for the discussion portion of this opinion.

---

1Bachmann does not appeal the dismissal of her Whistleblower Protection Act claim, pursuant to NMSA 1978, Section 10-16C-1 to -6 (2010). The district court held that UNM had not eliminated her job in retaliation against her for protected communications

## A. Bachmann's Employment With KNME

**{6}** Bachmann worked for KNME. KNME staff are employees of UNM. The parties do not dispute that Bachmann's employment was governed by the terms of an implied contract of public employment created by the UNM Employment Manual. *See Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-029, ¶ 11, 121 N.M. 728, 918 P.2d 7 (holding that a public employer personnel manual "gives rise to an implied contract if it controlled the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures it outlines." (internal quotation marks and citation omitted)).

**{7}** Bachmann was hired by KNME in February 2001. She assumed the role of Director of Development for KNME in the fall of that same year. Four years later, in April 2005, Bachmann was promoted to Associate General Manager at KNME, the second highest paid position at KNME. Bachmann continued to direct development, along with assuming additional duties as Associate General Manager.

## B. Bachmann's Layoff

**{8}** In October 2009 Bachmann's position at KNME was eliminated, and she was laid off. Although Bachmann's title remained Associate General Manager, by the time she was laid off, her primary, indeed perhaps her only duties, were as Director of Development.

**{9}** Bachmann's breach of contract claim challenging the elimination of her position and her layoff relied on Policy 3225 of the UNM Employment Manual, which addresses separation from employment. Section 5 of separation from employment Policy 3225,[2] the provision at issue in this case, is entitled, "Layoff." Subsection 5.1 addresses both the substantive and procedural requirements, which must be met by an administrator to obtain UNM's approval to eliminate a position. The introductory paragraph of Section 5 limits layoff to situations where program demands have changed, or where there has been a loss of funding for programs or services. Section 5's introductory paragraph states in relevant part as follows:

> From time to time it may be necessary for [UNM], or any unit within [UNM], to restructure its programs and services in response to changing demands, or loss of funding for the programs or services. When there is a loss of funding or a unit is restructured, it may be necessary to eliminate one (1) or more staff positions.

**{10}** Bachmann challenged the reason for her layoff in the district court, contending that her position was eliminated in retaliation for protected communications about potential misuse of KNME funds by UNM, and that the loss of funds claimed by UNM to justify her layoff was a pretext. UNM contended that Bachmann's position was

---

2The contract provisions referred to hereinafter are part of Policy 3225. For the sake of simplicity, we refer to them solely by their section or subsection number, without reference to the policy number.

eliminated "solely as a cost-saving measure during a severe budget crisis[,]" which was consistent with Section 5 of the UNM Employee Manual. The district court agreed with UNM. After a bench trial, the district court found that Bachmann's position was eliminated "as a cost[-]saving measure as a result of operating losses, a budget crisis and economic downturn[,]" and not in avoidance of contract provisions or in retaliation for protected communications. On appeal, Bachmann does not challenge the district court's findings relating to the justification for her layoff, or the legal conclusions drawn by the district court from the findings: that there was no violation of the Whistleblower Protection Act, no breach of contract, and no breach of the covenant of good faith and fair dealing by UNM.

**C.** **UNM's Failure to Hire Bachmann for Her Restored Former Position Eighteen Months After Her Layoff**

**{11}** In April 2011 approximately eighteen months after Bachmann's position was eliminated, KNME, with additional funding available, restructured its staff and obtained permission from UNM to restore the Director of Development position. KNME did not offer the position to Bachmann, and instead posted a national search for applicants, and ultimately filled the position approximately two years after Bachmann's layoff. Bachmann claimed in the district court that KNME's failure to reinstate her to the Director of Development position when that position was restored breached the terms of Subsection 5.1.4 of her employment contract, or, in the alternative, breached the covenant of good faith and fair dealing by depriving her of the benefits of Subsection 5.1.4 in bad faith.

**{12}** Subsection 5.1.4 is one of a list of six requirements (*See* Subsections 5.1.1 through Subsection 5.1.6), which must be met by an administrator in order to obtain UNM approval to eliminate a position and lay off an employee. In its first paragraph, Subsection 5.1.4 provides that the administrator must agree that "the eliminated position will not be reinstated for at least one (1) year from the date of elimination." The first paragraph of Subsection 5.1.4 states as follows:

> The administrator must agree that the eliminated position will not be reinstated for at least one (1) year from the date of elimination. During this time period a position may not be reclassified to take the place of the position eliminated. Reinstatement of the position must be approved be the Provost, executive vice president, or vice president responsible for the organization.

**{13}** The second paragraph of Subsection 5.1.4 provides that if the position was eliminated due to a loss of funding, and additional funding is received resulting in reinstatement of the position, the reinstated position must be offered to the individual who was laid off. This paragraph does not include a time period for reinstatement; it reads as follows:

If the position was eliminated due to a loss of funding and additional funding is received resulting in reinstatement of the position, the hiring officer must first offer the position to the individual laid off due to the funding loss.

## II. DISCUSSION

### A. UNM Did Not Breach Bachmann's Contract of Employment When It Failed to Reinstate Her to the Director of Development Position Eighteen Months After Her Layoff

**{14}** Although we agree with the district court's conclusion that UNM did not breach Bachmann's implied contract of employment by failing to reinstate her to the Director of Development position eighteen months after she was laid off, we arrive at this conclusion by a different route than the district court. We first address, in Section B below, whether Subsection 5.1.4 is ambiguous as to the time period during which a laid-off employee has a right to be reinstated if funding and the position are restored. We conclude that Subsection 5.1.4 is capable of multiple constructions, leading to different conclusions about the intended time period. We therefore agree with the district court that this provision is ambiguous as a matter of law.[3]

**{15}** We next turn, in Section C below, to the uncontroverted evidence at trial of the parties' intended construction of Subsection 5.1.4. Neither party points to any evidence in the record that supports the district court's decision that a six-month period applies to reinstatement, pursuant to Subsection 5.1.4, nor have we found any such evidence in the record. Because New Mexico law requires that the terms of a contract be construed as a matter of fact, and in accordance with the intent of the parties to the contract, we conclude that the district court erred in applying a six-month period for reinstatement. The uncontroverted evidence at trial shows that the parties' intent is to impose a maximum time period of one year, drawn from the first paragraph of Subsection 5.1.4. This construction of the contract does not change the result in this case. Whether the time limit was six months or one year, Bachmann was not entitled to reinstatement eighteen months after her layoff. We therefore agree with the district court's conclusion that UNM did not breach Bachmann's contract of employment when it failed to reinstate her to her former position.

### B. The Terms of the Contract Are Ambiguous

**{16}** We first determine whether Subsection 5.1.4 of the UNM Employment Manual, governing separation from employment, is ambiguous.

**{17}** Whether a contract contains an ambiguity is a matter of law is reviewed by this Court de novo. *ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 23, 299 P.3d 844. "An

---

3Although the district court did not explicitly conclude that the provision was ambiguous, we infer that the district court found the provision ambiguous based on the court's denial of summary judgment because of a dispute of fact.

ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity." *Mark V, Inc. v. Mellekas*, 1993-NMSC-001, ¶ 12, 114 N.M. 778, 845 P.2d 1232. This Court has described a contract as ambiguous "if different sections conflict or if the language is capable of more than one meaning." *Thompson v. Potter*, 2012-NMCA-014, ¶ 12, 268 P.3d 57. In determining whether a provision is ambiguous, "[w]e view the contract as a harmonious whole, give meaning to every provision, and accord each part of the contract its significance in light of other provisions." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 31, 314 P.3d 688. (internal quotation marks and citation omitted).

**{18}** Applying these standards to Subsection 5.1.4, we agree with the district court's determination that the provision at issue is capable of more than one meaning. The second paragraph of Subsection 5.1.4 plainly provides for the reinstatement of a laid-off employee if funding is restored. What is less than clear is the time period for reinstatement. We see at least three ways of construing this provision, any of which could reasonably reflect the parties' actual intent.

**{19}** The first way of interpreting Subsection 5.1.4 is to read the second paragraph, the paragraph imposing the requirement to reinstate the laid-off employee if funding is restored, according to the plain meaning of its words. Under this construction, advocated by Bachmann, the failure to mention a time period shows that the provision's intent is that the laid-off employee's right to reinstatement will continue indefinitely, whenever funding is received and a position reinstated. Bachmann supports this construction by reading the requirement in the first paragraph, that an administrator agree that a position will be eliminated for a full year when instituting a layoff, as absolutely prohibiting restoration of a position in less than one year, even if funding is unexpectedly restored. Bachmann points out that, under her construction of Subsection 5.1.4, reinstatement eighteen months after a layoff is really only six months after the expiration of that one-year period. Finally, she contends that, if an indefinite period beginning a year after a layoff is viewed as unreasonable, then this Court should treat the failure to specify a time period as an omitted term, and should supply a reasonable time period as a matter of law.

**{20}** A second possible construction of Subsection 5.1.4 begins by looking at the placement of the second paragraph, a paragraph seemingly addressing the right of an employee to reinstatement, in what is otherwise a list of the steps an administrator must take to obtain approval from UNM to eliminate a position. The second paragraph appears out of place in a provision directing an administrator on how to complete an application to eliminate a position, including a requirement that the application include an agreement to not restore the position for one year. If, however, the second paragraph is read as creating an exception to the one-year period, intended to allow an administrator to reinstate a position if lost funds are unexpectedly restored, placement in this section makes much more sense. Relying on this construction of Subsection 5.1.4, UNM contends that the second paragraph allows an administrator who receives unexpected funds during the one-year period following the elimination of a position to effectively reverse the elimination of the position, including reversing the layoff and reinstating the laid-off employee to his or her former position.

**{21}** The third possible construction, the one adopted by the district court, relies on the assumption that the second paragraph of Subsection 5.1.4 generally addresses the rights of employees who are subject to layoff. Finding the second paragraph out of place in a subsection addressing administrative procedures, the district court reads the second paragraph of Subsection 5.1.4 as if it were part of Subsection 5.2, a provision squarely addressing the rights of employees after a layoff by creating a "layoff roster" giving employees laid off in the previous six months priority in hiring for open positions at the same or lower classification level university-wide. The district court concluded that it is logical and reasonable to borrow the six-month period an employee is permitted to remain on the layoff roster and apply that same period to reinstatement under Subsection 5.1.4.

**{22}** None of these three constructions is so inherently unreasonable as to allow us to say, as a matter of law, that it is inconsistent with the meaning intended by the parties. All of the constructions give "meaning and significance to each word or phrase" and take some account of the "context of the entire contract," as required by the canons of contract construction. *See H-B-S P'ship v. Aircoa Hosp. Servs., Inc.*, 2005-NMCA-068, ¶ 19, 137 N.M. 626, 114 P.3d 306. Because the contractual provision at issue is susceptible to reasonable but conflicting meanings when the cannons of construction are applied, we conclude that it is ambiguous as a matter of law. *See C.R. Anthony Co. v. Loretto Mall Partners*, 1991-NMSC-070, ¶ 17, 112 N.M. 504, 817 P.2d 238.

**C.      The District Court Construction of Subsection 5.1.4 Conflicts With the Unchallenged Evidence in the Record of the Parties' Intent**

**{23}** Having determined that Subsection 5.1.4 is ambiguous, we must next consider whether the district court properly construed this provision following trial. We conclude that the district court misapplied the principles of law governing contract construction, disregarding undisputed evidence of the meaning intended by the parties, and instead construing Subsection 5.1.4 as a matter of law, based solely on logic and reason, unsupported by the evidence of the parties' intent.

**{24}** It is settled law that "[w]hen interpreting a contract, we give force and effect to the intent of the parties." *Medina v. Sunstate Realty, Inc.*, 1995-NMSC-002, ¶ 8, 119 N.M. 136, 889 P.2d 171. Our Supreme Court has held that "the construction of a contract adopted by the parties, as evidenced by their conduct and practices, is entitled to great weight, if not the controlling weight, in ascertaining their intention and their understanding of the contract." *Schultz & Lindsay Constr. Co. v. State*, 1972-NMSC-013, ¶ 5, 83 N.M. 534, 494 P.2d 612. Once a contract term is found to be ambiguous, the meaning to be given to the words of the contract is a question of fact. *See Mark V, Inc.*, 1993-NMSC-001, ¶ 13 (holding that, in determining the meaning of ambiguous terms, "the fact[-]finder may consider extrinsic evidence of the language and conduct of the parties and the circumstances surrounding the agreement, as well as oral evidence of the parties' intent"). Only if the parties do not offer evidence of either the circumstances surrounding the agreement or the course of conduct or course of performance of the contract may the court "resolve any ambiguity as a matter of law by

interpreting the contract using accepted canons of contract construction and traditional rules of grammar and punctuation." *Id.*

**{25}** We apply these principles to the evidence in the trial record. At the bench trial in this matter, the district court heard the testimony of UNM's vice president of human resources, Helen Gonzales. Gonzales had been employed in the UNM Human Resources Department since 1992, thus serving there during the entire period of Bachmann's employment at KNME. Gonzales testified that Subsection 5.1.4 is administered by her department, as is Subsection 5.2. She explained that, in addition to overseeing the implementation of Subsections 5.1. and 5.2, the human resources department was also responsible, during her tenure, for periodically reviewing and amending the provisions of the UNM Employment Manual.

**{26}** Gonzales testified that the human resources department has construed the second paragraph of Subsection 5.1.4, over many years, to require reinstatement of a laid-off employee if the funding is received and the position restored during the one-year period set out in the first paragraph of that subsection. She explained that it has been the human resources department's practice to review the conduct of the various departments or units for compliance with Subsection 5.1.4 for a one-year period following a layoff, and to require reinstatement of a laid-off employee only if funding for the position is unexpectedly restored within that year. She agreed with Bachmann's counsel's hypothetical that Bachmann would have been entitled to be reinstated if the position she occupied before her layoff had been posted less than one year after she was laid off.

**{27}** Bachmann did not provide any evidence through testimony or otherwise, showing that Subsection 5.1.4 had ever been applied during her employment at UNM to reinstate a former employee to a position restored after a one-year period. Nor did she identify any past practice or conduct of UNM to support her interpretation of the provision as either not applying until a year had passed or as having no time limit. As a result, the record contains no evidence contradicting the evidence presented by Gonzales regarding the intent of the employer in adopting Subsection 5.1.4.

**{28}** Gonzales and Bachmann both testified about Subsection 5.2, the layoff roster provision, in the context of a claim to be rehired into a lower-classified position, not before us on appeal. They agreed that the provision gave an employee who had been laid off a right to be rehired to a different position at UNM, classified the same or lower than their previous position, for a six-month period after layoff. Neither Gonzales nor Bachmann testified to an intent to apply the six-month time period found in Subsection 5.2 to reinstatement under Subsection 5.1.4. Both viewed the provisions as independent of one another.

**{29}** Given the uncontradicted evidence in the record regarding the construction and past practice of UNM, and the absence of any evidence supporting the district court's interpretation of Subsections 5.1.4 and 5.2, we conclude that the district court applied the wrong standard of contract interpretation, asserting its own view of what was

"reasonable and practical," instead of ascertaining the intent of the contracting parties based on the evidence at trial, as our contract law requires. *See Schultz & Lindsay Constr. Co.*, 1972-NMSC-013, ¶ 5.

**{30}** Although we conclude that the district court erred in its application of the law governing construction of the implied contract of employment, we nonetheless affirm the district court's dismissal of Bachmann's claim for breach of contract. Although Bachmann's right to reinstatement extended for a one-year period, and not six months, as the district court found, she was not entitled to reinstatement and there was no breach of contract by UNM. *See Vargas*, 2008-NMSC-019, ¶ 8 ("Under the right for any reason doctrine, we may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below." (internal quotation marks and citation omitted)). The district court failed to give effect to the undisputed testimony of the parties' intent, but it was correct in its dismissal of Bachmann's breach of contract claim. Because Bachmann's position was not restored and posted until eighteen months after her layoff, UNM had no contractual obligation to reinstate her, and did not breach her contract of employment by hiring someone else.

## D. KNME and UNM Did Not Breach the Covenant of Good Faith and Fair Dealing

**{31}** Finally, Bachmann objects on appeal to what she claims is the district court's failure to address her covenant of good faith and fair dealing claim separately from her breach of contract claim. We construe the district court's comment that it need not separately address the covenant of good faith and fair dealing as a recognition that the court had already found against Bachmann on her claims of bad faith, retaliation, and pretext. The district court's unchallenged findings of fact, that UNM did not act in bad faith in laying her off, but had laid her off solely because of a loss of funds, and did not retaliate against her for protected communications, are dispositive of Bachmann's claim for breach of the covenant of good faith and fair dealing. Bachmann relied in the district court on a single course of conduct by KNME and UNM, which she alleged was motivated by a bad faith desire to fire her in retaliation for protected communications. The district court adopted findings of fact rejecting her allegations, affirmatively finding no improper motivation by UNM. Without a showing of bad faith or improper motivation, Bachmann's claim for breach of the covenant of good faith and fair dealing fails. *See Jaynes v. Strong-Thorne Mortuary, Inc.*, 1998-NMSC-004, ¶ 13, 124 N.M. 613, 954 P.2d 45 (recognizing that "[t]he breach of this covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party" (internal quotation marks and citation omitted)). We therefore affirm the district court's dismissal of Bachmann's claim of breach of the covenant of good faith and fair dealing.

## CONCLUSION

**{32}** We affirm the district court's dismissal of Bachmann's claims as challenged on appeal and the entry of judgment for UNM.

**{33}   IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**BRIANA H. ZAMORA, Judge**