IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMCA-023

Filing Date: December 21, 2009

Docket No. 28,411

STATE OF NEW MEXICO,

  Plaintiff-Appellant,

v.

CARMEN GONZALES,

  Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY
John M. Paternoster, District Judge

Gary K. King, Attorney General
Francine A. Chavez, Assistant Attorney General
Santa Fe, NM

for Appellant

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellee

## OPINION

**VANZI, Judge.**

**{1}** The knock and announce rule requires that officers entering a residence to execute a search or arrest warrant knock and announce their identity and purpose and then wait a reasonable time to determine whether consent to enter will be given. *See State v. Vargas*, 2008-NMSC-019, ¶ 9, 143 N.M. 692, 181 P.3d 684; *State v. Attaway*, 117 N.M. 141, 149-50, 870 P.2d 103, 111-12 (1994), *modified on other grounds by State v. Lopez*, 2005-NMSC-018, ¶¶ 13-20, 138 N.M. 9, 116 P.3d 80. After listening to an officer's belt tape recording of the officers' entry into the residence, the district court ruled that eight seconds of announcing, unaccompanied by any knocking or waiting, and then

1

battering the door down with a battering ram, did not comply with the knock and announce rule. Accordingly, the court suppressed evidence of cocaine and marijuana found in Defendant's home. The State challenges the court's findings and its decision to suppress the evidence. We conclude that the belt tape provides substantial evidence supporting the court's findings, agree with the court's conclusion that the entry was illegal, and affirm the order suppressing evidence.

## BACKGROUND

**{2}** On February 2, 2007, in Questa, New Mexico, police executed a search warrant at Defendant's residence looking for drugs. The State presented no evidence of any exigency or that Defendant, a fifty-eight-year-old woman, presented any particular danger.

**{3}** At an evidentiary hearing, the court heard the testimony of Officer Martinez and of Defendant and received as evidence an audio recording of Officer Martinez's belt tape recording the execution of the warrant. The tape indicates that the event began with multiple police repeatedly yelling, "State Police! Search warrant!" The court found that the "police cannot be heard actually knocking on the door of the residence." The court found that "[t]here are . . . striking sounds . . . eight seconds after the police began yelling." These striking sounds were loud and consistent with the sound of a battering ram. "The activity of yelling, striking[,] and entering the residence was one continuous stream, unbroken by any other activity." The court further found that there is no evidence that the police "waited . . . for any period of time."

## DISCUSSION

### A. Standard of Review

**{4}** "The standard of review for suppression rulings is whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Hand*, 2008-NMSC-014, ¶ 6, 143 N.M. 530, 178 P.3d 165. We review the district court's purely factual assessments to determine if they are supported by substantial evidence. *Id.* Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]'" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (quoting *State v. Baca*, 1997-NMSC-059, ¶ 14, 124 N.M. 333, 950 P.2d 776). After deferring to the court's factual findings, we review the constitutional question of whether the search and seizure was reasonable de novo. *Hand*, 2008-NMSC-014, ¶ 6.

### B. Knock and Announce Rule

**{5}** Law enforcement officers executing a search or arrest warrant are constitutionally required to knock and announce their identity and purpose and then wait a reasonable time to determine if consent to enter will be given, prior to forcefully entering a dwelling. *State v. Johnson*, 2006-NMSC-049, ¶ 10, 140 N.M. 653, 146 P.3d 298. There are no bright-line rules establishing how long officers must reasonably wait, and we consider the totality of the circumstances to determine whether the officers' wait was long enough. *Hand*, 2008-NMSC-014, ¶ 7.

**{6}** These circumstances include the defendant's conduct. If a defendant's conduct allows the police to infer that they are being denied entry, then officers need not wait further to forcibly enter. *See id.* (stating that if the occupants do not admit the officers within a reasonable period of time, the officers are deemed to have been constructively refused admittance and may then enter by force). Evidence establishing constructive refusal can consist of officers hearing movement away from the door or hearing someone moving inside combined with no attempt to answer the door. *Id.* ¶ 10.

**{7}** Exigent circumstances will also excuse compliance with the knock and announce requirement, *Johnson*, 2006-NMSC-049, ¶ 10, as will futility. *See Vargas*, 2008-NMSC-019, ¶¶ 12-17 (holding that the police did not need to comply with the rule where the defendant had already seen them). However, the State did not argue here or below that exigent circumstances or futility justified entry without knocking. Therefore, we do not address these theories. *See State v. Ware*, 118 N.M. 703, 705, 884 P.2d 1182, 1184 (Ct. App. 1994) (stating that we do not address arguments not argued below or briefed).

### C.    Substantial Evidence

**{8}** The belt tape provides accurate evidence of the police activity, including a precise time line. We have reviewed the tape and conclude that it provides substantial evidence to support the court's findings that the police announced for eight seconds, never knocked, and never waited to give Defendant any realistic opportunity to peaceably open the door. The tape supports the court's essential finding that a number of police yelled, "State Police!  Search warrant!" continuously for eight seconds and then rammed in the door.

### 1.    Knocking

**{9}** The State challenges the court's findings and describes a rather different sequence of events in its brief. The State asserts that the officers "began knocking loudly as they continued to announce their presence." The district court specifically found, however, that the "police cannot be heard actually knocking on the door of the residence." The State argues that the knocks that can be heard on the tape, beginning eight seconds after the police began announcing their presence, constitute knocking. The State relies on Officer Martinez's "uncontested" testimony that it took only one strike of the battering ram to force open the door. Building on that testimony, the State argues that it took only a single blow of the battering ram to break open the door, so the previous "banging" sounds must have been knocking.

**{10}** After interpreting the banging sounds in this way, the State calculates the period between announcing and entry as fourteen seconds. However, the court rejected the State's view of the evidence. The district court found that the sounds were made by a battering ram. The district court's factual determination, to which we must defer, is amply supported. *See State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (observing that the reviewing court "must defer to the district court with respect to findings of historical fact"). The court was not required to accept the "uncontested" testimony of Officer Martinez when the tape provided another version of events.

**{11}** The State also attempts to enlarge the time the police were at the door by calculating from arrival to entry. This is not the appropriate measurement; the appropriate measurement is the time period between knocking and announcing and when forcible entry begins. *See Johnson*, 2006-NMSC-049, ¶ 11 (relying on case law stating that the relevant time period is from announcement to when the officers hit the door with the battering ram). Finally, the State's equating the period of time during which the battering ram was striking the door with knocking has been specifically rejected by our Supreme Court. *See id.* ("When the officers began hitting the door with the battering ram, they ceased 'knocking' and began 'entering.'").

### 2.      Constructive Refusal

**{12}** The State argues that there was evidence from which the police could reasonably infer that they were being denied admittance that justified their quick, forcible entry. *See Hand*, 2008-NMSC-014, ¶ 7. The State relies on Officer Martinez's testimony that he looked into the window, saw Defendant on her knees, that she stood up, walked from the living room into the kitchen area, stood in the entry between the living room and the kitchen, and looked straight at him. According to the State, "Defendant just stood still, looked at Officer Martinez[,] and smiled."

**{13}** The court found that the evidence was conflicting "as to whether [D]efendant was visually present to the police." It considered Defendant's testimony and a videotape of her residence, which she contended demonstrated that looking through the window a person could not have seen into the house as Officer Martinez described. After again considering the evidence, the court did not accept the State's version of events and rejected the State's constructive refusal theory. As a result, we must disregard the State's description. *See generally Jason L.*, 2000-NMSC-018, ¶ 10 ("[A]ll reasonable inferences in support of the [district] court's decision will be indulged in, and all inferences or evidence to the contrary will be disregarded." (alterations in original) (internal quotation marks and citation omitted)). Contrary to the State's slow-motion description of discrete events in its brief, the tape's real-time record underscores the brevity of the time period between announcing and forcible entry and the lack of any evidence corroborating Officer Martinez's version of events. The extraordinarily short period of time between announcement and forcible entry supports the district court's finding that Defendant did not constructively refuse admission. Moreover, neither evidence of a command to open the door, which is not heard on the tape until seconds after the first strike of the ram, or the comment "she is not going to come out" that the district court did not find to exist, satisfy the clear evidence of refusal required by *Hand*.

**{14}** We are not persuaded by the State's challenge to the court's findings. The belt tape gives accurate, objective information about the timing and nature of the police activity. The court reviewed the tape and made detailed findings. After reviewing the tape, we conclude that the court's findings accurately reflect the historical facts and are supported by substantial evidence.

### D.      Illegal Entry

4

**{15}** After deferring to the court's factual findings, we review de novo whether the search and seizure was reasonable. *Hand*, 2008-NMSC-014, ¶ 6. The findings establish that the police began battering the door within eight seconds, and there was no knocking, no waiting period, and no opportunity for Defendant to respond by opening the door. Considering the findings made by the court, the ultimate question is whether the officers' course of conduct was reasonable. *See Johnson*, 2006-NMSC-049, ¶ 10. The district court concluded that it was not, and we agree.

**{16}** Unless there is exigency, our cases require knocking, announcing, and waiting a reasonable period of time. These are discrete and necessary requirements. *Id.* ¶ 12 ("Absent exigent circumstances, officers must knock *and* announce their purpose and identity, *then wait a reasonable period of time* to determine if consent to enter will be given before forcefully entering." (Emphasis added.)); *Hand*, 2008-NMSC-014, ¶ 11 ("We accept the reasoning that an officer's perception of movement within the place to be searched, *after knocking and announcing,* is a significant component of the constructive refusal analysis." (Emphasis added.)). In this case, two of these requirements—knocking, and waiting a reasonable period of time—are missing. Although we have cases condoning a ten-second waiting period, *Johnson*, 2006-NMSC-049, ¶ 12, a ten-to-twenty-second waiting period, *Hand*, 2008-NMSC-014, ¶ 11, and a ten-to-fifteen-second waiting period, *Attaway*, 117 N.M. at 153, 870 P.2d at 115, we do not have any authority holding that, when there is no exigency, knocking and waiting are not required. Nor do we have any authority accepting a period as short as eight seconds between announcing and forcible entry. Moreover, this case is distinguishable from these three cases in several critical respects.

**{17}** In *Johnson*, the small nature of the hotel room justified a relatively short wait before the police forcibly entered. *Johnson*, 2006-NMSC-049, ¶¶ 5, 15, 17 (holding that a ten-second knock and announce period was sufficient in light of the fact that the motel room was so small it could be walked through in only a few steps). By contrast, Defendant's residence was a double-wide trailer home with at least three bedrooms and was described by the State as a "pretty sizeable house". *Johnson* is different because officers knocked before using the battering ram. *Id.* ¶ 15. Additionally, *Johnson* is different because there was evidence to support a finding that the defendant was constructively refusing admittance. *Id.* The motel room was small, and the defendant would have been right near the door, so his failure to respond established constructive refusal. *Id.* ¶ 17. Here, by contrast, the State did not establish, and the court did not find, that Defendant constructively refused admittance. The evidence that supported constructive refusal in *Johnson* is lacking here.

**{18}** This case is also distinguishable from *Hand*. *See Hand*, 2008-NMSC-014, ¶¶ 9, 11 (holding that a ten-to-twenty-second knock and announce period was sufficient to support an inference that admission was being denied, based on the fact that "a small space" was involved and the defendant made no verbal response). The trailer in *Hand* was "a small space like the motel room in *Johnson*." *Hand*, 2008-NMSC-014, ¶ 9. The Court in *Hand* also considered that, after knocking and announcing, one of the agents perceived movement inside but no movement toward the door. *Id.* The officers also knocked and announced for ten-to-twenty seconds. *Id.* Here, by contrast, the officers did not knock and were battering the door after eight seconds had elapsed. The difference in the size of the space, the fact that the officers did not knock, and the shorter period of time distinguish this case from *Hand*.

5

**{19}** *Attaway* is distinguishable because the police knocked and waited a longer period of time, and there were legitimate and particular concerns about the defendant's dangerousness. *Attaway*, 117 N.M. at 153-54, 870 P.2d at 115-16.

**{20}** Although the State did not argue below that exigent circumstances excused compliance with the knock and announce rule, on appeal it suggests that the short time before entry was justified by the fact that drugs were the object of the search. General concerns such as this are insufficient to dispense with the requirements of the knock and announce rule. *See id.* at 152, 870 P.2d at 114 (stating that exceptions to the entry requirement must be founded on particularity and not on generality).

**{21}** We are unwilling to accept the State's generic assertion that drugs could be destroyed as justifying the officers' failure to comply with the knock and announce rule. *See State v. Ortega*, 117 N.M. 160, 162-63, 870 P.2d 122, 124-25 (1994) (holding that "the mere potential for destruction of evidence does not in itself give rise to any exigency," but that if the officer has good reason, based on "particular circumstances," that suspects will destroy evidence, that evidence will excuse compliance with the knock and announce rule).

**{22}** The knock and announce rule serves a number of purposes, including preventing the needless destruction of property and protecting "the sanctity of the home and individual privacy." *Attaway*, 117 N.M. at 147, 870 P.2d at 109. Both of these purposes were frustrated in this case without justification. The police did not knock, did not wait, and did not provide Defendant with any realistic opportunity to allow them to enter. In the absence of a showing of exigency, we conclude that the law enforcement officers violated the knock and announce rule, such that all evidence stemming therefrom was properly suppressed. Accordingly, we affirm.

**{23}** **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Judge**

_____
**RODERICK T. KENNEDY, Judge**

**Topic Index for *State v. Gonzalez*, No.28,411**

**AE**  **APPEAL AND ERROR**
AE-SR  Standard of Review
AE-SB  Substantial or Sufficient Evidence

**CL**  **CRIMINAL LAW**
CL-CL  Controlled Substances

**CA**  **CRIMINAL PROCEDURE**
CA-MR  Motion to Suppress
CA-SW  Search Warrant

**EV**  **EVIDENCE**
EV-TE  Taped Evidence