**Certiorari Denied, April 3, 2013, No. 34,053**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-056**

**Filing Date: February 18, 2013**

**Docket No. 30,370**

**STATE OF NEW MEXICO,**

    **Plaintiff-Appellant,**

**v.**

**BRIAN HICKS,**

    **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Thomas J. Hynes, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Acting Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**WECHSLER, Judge.**

**{1}**    This case presents the question of whether an officer's knowledge that the registered owner of a vehicle has a revoked license provides reasonable suspicion to stop the vehicle when the officer makes no effort to determine, prior to the stop, whether the driver of the vehicle is the registered owner. The State appeals from the district court's grant of

1

Defendant Brian Hicks's motion to suppress. *See* NMSA 1978, § 39-3-3(B)(2) (1972) (permitting the state to take an interlocutory appeal from an order granting a defendant's motion to suppress). The State contends that the district court erred in concluding that the stop of Defendant's vehicle was not supported by reasonable suspicion and thus violated the New Mexico Constitution. In *State v. Candelaria*, which was decided after the district court's decision in this case, we held that a stop effected on the basis of similar information did not violate the United States Constitution because it was supported by reasonable suspicion. 2011-NMCA-001, ¶ 15, 149 N.M. 125, 245 P.3d 69. We now hold that the same result is warranted under the New Mexico Constitution. Accordingly, we reverse.

**BACKGROUND**

**{2}** Defendant was charged by criminal information with driving while under the influence of intoxicating liquor (DWI), a fourth or subsequent offense, and driving with a suspended or revoked license. Defendant filed a motion to suppress, arguing *inter alia* that the stop of his vehicle was not supported by reasonable suspicion because the arresting officer did not confirm, prior to the stop, that Defendant was the registered owner of the vehicle. The parties stipulated to the following facts at the suppression hearing:

1. . . . Defendant's motor vehicle was being driven in San Juan County, New Mexico.

2. Officer [Matt] Costen observed the motor vehicle and "ran" the license plate of the vehicle through the New Mexico Motor Vehicle Department ("MVD").

3. The information from the MVD came back with the fact that the driving privileges of the registered owner of the motor vehicle had been revoked.

4. Officer Costen made no effort to visually observe the driver prior to the stop.

5. Based on the revocation information from the MVD, Officer Costen stopped the motor vehicle.

6. Upon contacting the driver, Officer Costen discovered that . . . Defendant was driving the vehicle, that . . . Defendant was the owner of the vehicle who had a revoked license[,] and that . . . Defendant appeared intoxicated.

**{3}** The district court orally granted Defendant's motion to suppress. The State filed a motion to reconsider. The State noted that there did not appear to be any New Mexico case law on point, but cited numerous cases from other jurisdictions supporting its position that

the stop of Defendant's vehicle was supported by reasonable suspicion and thus did not violate the United States or New Mexico Constitutions. In response, Defendant argued the stop violated the New Mexico Constitution because New Mexico affords greater protection than the United States Constitution against unreasonable searches and seizures involving automobiles.

**{4}** The district court denied the State's motion. In a written order, dated March 25, 2010, the district court acknowledged that "[c]ase law from other [s]tates could be construed to mean that Officer Costen had . . . reasonable suspicion to stop Defendant's vehicle." However, the district court held that the stop violated the New Mexico Constitution. The district court quoted *State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶ 15, 130 N.M. 386, 25 P.3d 225, for the proposition that the New Mexico Constitution affords an "extra layer of protection from unreasonable searches and seizures involving automobiles." The district court noted it might have upheld the stop if the officer had observed the driver before stopping the vehicle to determine whether he matched the basic description of the registered owner.

## MOTION TO SUPPRESS

**{5}** In reviewing a motion to suppress, "[w]e review factual determinations by the [district] court under a substantial evidence standard and legal questions de novo." *State v. Brusuelas*, 2009-NMCA-111, ¶ 5, 147 N.M. 233, 219 P.3d 1 (internal quotation marks and citation omitted). The question on appeal is whether the officer had reasonable suspicion to stop Defendant's vehicle solely on the basis of information that the registered owner of the vehicle had a revoked license. Because this is a legal question, our review is de novo. *See id.*

**{6}** The State contends that *Candelaria* is controlling. In *Candelaria*, we considered whether a traffic stop violated the Fourth Amendment of the United States Constitution when, at the time they effected the stop, the police officers "knew only that the [vehicle] was registered to [a person], whose license had been suspended." 2011-NMCA-001, ¶¶ 9, 11. We recognized this question as one of first impression in New Mexico and elected to follow "an overwhelming majority of jurisdictions" in holding the stop was supported by reasonable suspicion and thus did not violate the Fourth Amendment. *Id.* ¶¶ 11, 13. Defendant contends that *Candelaria* is not controlling because, in addition to knowing that the registered owner's license had been suspended, the police officers in *Candelaria* observed the vehicle under suspicious circumstances prior to the stop.

**{7}** It is true that, in *Candelaria*, the police officers observed the vehicle in which the defendant was driving "under suspicious circumstances." *Id.* ¶ 1. Specifically, the police observed that, after they pulled into a parking lot, the vehicle "sped away." *Id.* ¶ 2. A careful reading of *Candelaria* reveals this distinction is one without a difference, however, as we did not consider the "suspicious circumstances" in concluding the officers had reasonable suspicion to effect the stop. We explained:

3

When police observe a vehicle registered to an owner whose license has been suspended, it is reasonable to conclude that the driver is the registrant—that is, until officers become aware of facts to contradict their assumption. The concept of reasonable suspicion has always embraced a certain degree of uncertainty. In the case before us, because [the officers] were aware of no facts to contradict their inference that [the person] was driving the car for which he was the registered owner, we follow the approach of the majority of jurisdictions and hold that police possessed reasonable suspicion to [e]ffect a traffic stop.

*Id.* ¶ 15. We noted that "[o]ur holding should come as no surprise" because "New Mexico's civil law has long recognized a presumption that, in the absence of evidence to the contrary, the registered owner of a vehicle is that vehicle's driver." *Id.*

**{8}** In deciding Defendant's motion to suppress, the district court did not have the benefit of our decision in *Candelaria*. Without any clear authority from either this Court or our Supreme Court, the district court declined to follow the out-of-state cases cited by the State and held that suppression was warranted under the New Mexico Constitution. On appeal, Defendant focuses entirely on distinguishing *Candelaria*, which is premised on a federal constitutional analysis. Defendant does not argue the district court's decision should be upheld under the New Mexico Constitution. We nonetheless consider the issue because it was the express basis for the district court's ruling. We do not normally consider arguments that are not developed on appeal. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (explaining that this Court does not review unclear or undeveloped arguments); *see, e.g.*, *State v. Dickert*, 2012-NMCA-004, ¶ 46, 268 P.3d 515 (declining to address argument inadequately developed by the defendant), *cert. denied*, 2011-NMCERT-012, 291 P.3d 158. However, because the order being appealed from is based on a state constitutional analysis, we will review the issue under the New Mexico Constitution.

**{9}** The United States and New Mexico Constitutions "provide overlapping protections against unreasonable searches and seizures[.]" *State v. Rowell*, 2008-NMSC-041, ¶ 12, 144 N.M. 371, 188 P.3d 95; *see* U.S. Const. amend. IV (guaranteeing "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures"); N.M. Const. art. II, § 10 ("The people shall be secure . . . from unreasonable searches and seizures[.]"). Our Supreme Court has adopted an interstitial approach for reviewing constitutional questions under federal and state law. *See State v. Gomez*, 1997-NMSC-006, ¶ 21, 122 N.M. 777, 932 P.2d 1. Under this approach, we first ask "whether the right being asserted is protected under the federal constitution. If it is, then the state constitutional claim is not reached. If it is not, then the state constitution is examined." *Id.* ¶ 19.

**{10}** We have already determined that, under *Candelaria*, Defendant's rights are not protected under the United States Constitution. We now examine Defendant's rights under the New Mexico Constitution. *Gomez* instructs that we may "diverge from federal precedent

4

for three reasons: a flawed federal analysis, structural differences between state and federal government, or distinctive state characteristics." 1997-NMSC-006, ¶ 19. We find no flaws in the federal analysis undertaken in *Candelaria*; nor do we perceive any structural differences between state and federal government relevant to the question presented. If we were to reach a different result, it would be because of distinctive state characteristics.

**{11}** "It is well-established that Article II, Section 10 provides more protection against unreasonable searches and seizures than the Fourth Amendment." *State v. Leyva*, 2011-NMSC-009, ¶ 51, 149 N.M. 435, 250 P.3d 861. Our Supreme Court has specifically recognized that "[t]he extra layer of protection from unreasonable searches and seizures involving automobiles is a distinct characteristic of New Mexico constitutional law." *Cardenas-Alvarez*, 2001-NMSC-017, ¶ 15.

**{12}** In *Cardenas-Alvarez*, the case relied upon by the district court in the present case, our Supreme Court held that a federal agent violated the New Mexico Constitution by referring the defendant to a secondary inspection area after a traffic stop at a permanent border checkpoint in the absence of reasonable suspicion. *Id.* ¶¶ 3, 21. Our Supreme Court held that the agent's actions did not violate the United States Constitution because "[u]nder federal law, [the d]efendant's detention constituted a routine border checkpoint stop and therefore need not have been supported by suspicious circumstances." *Id.* ¶ 7. Importantly, our Supreme Court did not hold that reasonable suspicion was present under federal law and lacking under state law; instead, it held that reasonable suspicion was required under state law and not required under federal law. *See id.* ¶ 49 (Baca, J., concurring in the result).

**{13}** In *State v. Ochoa*, we refused to follow the lead of the United States Supreme Court in upholding pretextual traffic stops. 2009-NMCA-002, ¶ 1, 146 N.M. 32, 206 P.3d 143. We "depart[ed] from federal constitutional law . . . because we [found] the federal analysis unpersuasive and incompatible with our state's distinctively protective standards for searches and seizures of automobiles." *Id.* ¶ 12. We were especially concerned about the mechanical nature of the federal rule because our Constitution requires "that searches and seizures be reasonable based on the particular facts of each case." *Id.* ¶ 26. We noted that at least two other states, Washington and Delaware, had interpreted their state constitutions to provide greater protection than the federal constitution in the context of pretextual traffic stops. *See id.* ¶¶ 27-28.

**{14}** "The fact that we have departed from the analysis used to determine whether a violation of the Fourth Amendment occurred in certain contexts, however, does not require us to do so in all contexts." *Leyva*, 2011-NMSC-009, ¶ 51. We must conduct a "de novo review of the law[.]" *Id.* In the context of a non-pretextual traffic stop, we require that, to satisfy Article II, Section 10, a police officer must have "reasonable suspicion of criminal activity or probable cause that the traffic code has been violated." *Ochoa*, 2009-NMCA-002, ¶ 25. Driving with a revoked license is a criminal offense. *See* NMSA 1978, § 66-5-39(A) (1993) ("Any person who drives a motor vehicle on any public highway of this state at a time when his privilege to do so is suspended or revoked and who knows or should have

known that his license was suspended or revoked is guilty of a misdemeanor [.]"). Thus, the standard in this case is reasonable suspicion.

**{15}** "In determining whether reasonable suspicion exists, we examine the totality of the circumstances." *Cardenas-Alvarez*, 2001-NMSC-017, ¶ 21. "Reasonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *Id.* (internal quotation marks and citation omitted). "Unsupported intuition and inarticulate hunches are not sufficient." *State v. Garcia*, 2009-NMSC-046, ¶ 43, 147 N.M. 134, 217 P.3d 1032 (internal quotation marks and citation omitted). "The purpose of requiring objectively reasonable suspicion based on the circumstances is to prevent and invalidate police conduct based on hunches, which are, by definition, subjective." *Ochoa*, 2009-NMCA-002, ¶ 25 (internal quotation marks and citation omitted).

**{16}** In this case, the officer stopped Defendant's vehicle after learning that the license of the registered owner of the vehicle had been revoked. The officer did not have a subjective hunch that Defendant was breaking the law; rather, he had a particularized suspicion that Defendant was breaking the law by driving with a revoked license. The officer could have been incorrect; he could have discovered that Defendant was not the registered owner and was not otherwise breaking the law. But, as we noted in *Candelaria*, and we believe equally applicable under a state constitutional analysis, "[t]he concept of reasonable suspicion has always embraced a certain degree of uncertainty." 2011-NMCA-001, ¶ 15.

**{17}** In *Gomez*, our Supreme Court determined that the New Mexico Constitution provides broader protection for warrantless searches of automobiles, holding that they required a showing of exigent circumstances. 1997-NMSC-006, ¶¶ 39-40. In *Ochoa*, we said that the *Gomez* Court "determined that where there is no reasonable basis to believe that the delay in obtaining a search warrant will jeopardize legitimate law enforcement interests, there is no justification for an exception to the warrant requirement." *Ochoa*, 2009-NMCA-002, ¶ 22 (citing *Gomez*, 1997-NMSC-006, ¶¶ 41-43). In this case, we believe that it would potentially jeopardize legitimate law enforcement interests to require police officers to determine, prior to effecting a traffic stop, whether the driver of a vehicle matches the basic description of the registered owner. In upholding a stop similar to the stop at issue here, the Indiana Supreme Court explained:

> We agree with the [s]tate that requiring the officer to verify the driver of the vehicle strikes against basic principles of safety because it puts the onus on the officer to maneuver himself into a position to clearly observe the driver in the midst of traffic. In addition, we acknowledge the difficulty that the driver verification requirement would impose on officers during late night hours and in situations where car windows are darkly tinted[.]

*Armfield v. State*, 918 N.E.2d 316, 322 (Ind. 2009) (alteration, internal quotation marks, and citation omitted); *see also State v. Vance*, 790 N.W.2d 775, 782 (Iowa 2010) ("[T]o forbid the police from relying on such an inference [that the driver of a vehicle is the registered

6

owner] would seriously limit an officer's ability to investigate suspension violations because there are few, if any, additional steps the officer can utilize to establish the driver of a vehicle is its registered owner."). *Armfield* and *Vance* were based on the United States Constitution, but we believe the policy considerations underlying these decisions are relevant to this case. Requiring police officers to do more than what the officer did here could potentially jeopardize the legitimate law enforcement interest of removing drivers with revoked or suspended licenses from our roadways.

**{18}** We agree with the State that the best and least intrusive way for the officer to confirm or dispel his suspicion that the driver of the vehicle he observed had a revoked license was through an investigatory traffic stop. *See State v. Affsprung*, 115 N.M. 546, 550, 854 P.2d 873, 877 (Ct. App. 1993) ("While it is true that reasonable suspicion does not provide carte blanche, it does allow detention sufficient to verify or dispel the circumstances giving rise to the suspicion."). In holding that the officer had reasonable suspicion to stop Defendant's vehicle, we are not adopting a bright-line rule of the type we criticized in *Ochoa*. 2009-NMCA-002, ¶ 26. Instead, consistent with our precedent, we base our conclusion on the totality of the circumstances presented in this case. Notably, and unlike in *Ochoa*, we have not located any case in which a state court has concluded that, under its constitution, an officer lacks reasonable suspicion to stop a vehicle on the basis of the same limited information the officer here possessed. In *Candelaria*, we explained that we found only one case "that still bears the force of law" supporting the argument that reasonable suspicion is lacking on these facts. 2011-NMCA-001, ¶ 12. That case, *State v. Cerino*, 117 P.3d 876, 878 (Idaho Ct. App. 2005), was premised on a federal constitutional analysis.

**{19}** We conclude that, in this circumstance, the result under the New Mexico Constitution is the same as under the United States Constitution. Like the officers in *Candelaria*, the officer here "possessed reasonable suspicion to believe that [Defendant's] vehicle, as well as its occupant . . . were subject to seizure." 2011-NMCA-001, ¶ 16. Accordingly, the stop of Defendant's vehicle did not violate the New Mexico Constitution.

**CONCLUSION**

**{20}** We reverse the district court's grant of Defendant's motion to suppress and remand for further proceedings consistent with this opinion.

**{21}    IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**MICHAEL E. VIGIL, Judge**

**Topic Index for** ***State v. Hicks***, **No. 30,370**

**CONSTITUTIONAL LAW**
Fourth Amendment
Suppression of Evidence

**CRIMINAL LAW**
Driving While Intoxicated
Motor Vehicle Violations

**CRIMINAL PROCEDURE**
Motion to Suppress
Reasonable Suspicion
Search and Seizure
Warrantless Search