This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                            **NO. 31,843**

**NIKKO NATHAN,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF UNION COUNTY**
**John M. Paternoster, District Judge**

Gary K. King, Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM
Francine A. Baca-Chavez, Assistant Attorney General
Albuquerque, NM

for Appellant

Alsup Law Office
Gary D. Alsup
Clayton, NM

for Appellee

## MEMORANDUM OPINION

**HANISEE, Judge.**

{1}     The State appeals the district court's decision and order granting Defendant's motion to suppress evidence obtained following a traffic stop near or within Clayton, New Mexico, in Union County. On appeal, the State maintained that the district court's ruling was unsupported by substantial evidence. Concluding otherwise, we affirm the district court's determination that the vehicle stop was unsupported by reasonable suspicion. Accordingly, we do not reach the State's remaining contentions regarding the propriety of the arresting officer's actions following the stop.

## BACKGROUND

{2}     On March 6, 2011, Defendant's vehicle was pulled over by the town of Clayton's K-9 certified police officer. The vehicle stop and the minutes preceding it, during which the officer followed Defendant's vehicle, were recorded by the dash camera located in the officer's marked police cruiser. The officer testified that he initiated the traffic stop because Defendant failed to maintain his lane of traffic by crossing over the double yellow line. Following the traffic stop, the officer ran his canine around Defendant's vehicle, while another officer searched Defendant's person. During the search, the canine alerted to the presence of narcotics in the vehicle and, following a search of the vehicle, methamphetamine was discovered. Defendant

was charged with trafficking by possession with intent to distribute methamphetamine contrary to NMSA 1978, Section 30-31-20(A)(3) (2006).

{3} Defendant moved to suppress the evidence obtained during the search, alleging that the stop was a pretext to conduct a narcotics investigation. At the hearing on the motion to suppress, the arresting officer testified that after Defendant failed to maintain his lane of traffic by crossing over the double yellow line, the officer developed a suspicion that Defendant may have been impaired. Instead of initiating a traffic stop immediately, the officer decided to follow the vehicle in an effort to obtain more information to establish probable cause. The officer recalled that Defendant periodically swerved back and forth from the center line to the outer line. The officer then testified that when he engaged his lights, the vehicle failed to stop. The officer stated that Defendant's vehicle then completely crossed from the southbound lane of traffic into the northbound lane. As a result, the officer sounded his siren, and Defendant eventually brought his vehicle to a stop.

{4} After reviewing the vehicle's dash camera footage, the district court, in its findings of fact, found that Defendant "did not appreciably drive in a suspicious or careless manner until the officer engaged his lights and/or siren." The district court further found that "[t]he videotape [does not] show such erratic driving as would cause a reasonable officer to conduct a traffic stop." In its conclusions of law, the district

3

court ruled that the "arresting officer did not have a reasonable suspicion that the driver of the vehicle was violating the traffic laws of the [s]tate or municipality." It held that the police officer's testimony was "inconsistent and not reliably credible" and that the "officer's determination that the driver was impaired by narcotics is judgmental and arbitrary." Further, the district court ruled that there "was no objective indicia of impairment." Thus, the district court suppressed and excluded the evidence seized during the traffic stop from use during trial. The State appeals from this decision.

**DISCUSSION**

**A.      Standard of Review**

{5}      Appellate review of a district court's decision on a motion to suppress evidence is a mixed question of law and fact. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. "[W]e must determine whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Trudelle*, 2007-NMCA-066, ¶ 13, 142 N.M. 18, 162 P.3d 173 (internal quotation marks and citation omitted). Thus, we review the factual findings of the district court for substantial evidence. *See id.* Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Gonzales*, 2010-NMCA-023, ¶ 4, 147 N.M. 735, 228 P.3d 519 (alteration, internal quotation

marks, and citation omitted). In reviewing for substantial evidence, "[t]he question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. Further, "we will not reweigh the evidence nor substitute our judgment for that of the [factfinder.]" *Id.* After deferring to the district court's factual findings, we then review the "constitutional question of whether the search and seizure was reasonable de novo." *Gonzales*, 2010-NMCA-023, ¶ 4.

{6}     Although the State agrees that the appropriate standard of review for a district court's ruling on a motion to suppress is substantial evidence review, it also appears to argue that we should review the dash camera footage de novo. The State contends that because the "district court solely relied upon the dash cam video" in making a determination on the motion to suppress, this Court is as in as good a position as the district court to review the video and make our own determination as to whether there was reasonable suspicion for the stop. We disagree. The State has overlooked that the district court did not merely rely on the videotape, which the State contends to be documentary evidence, in making its determination. Along with considering the videotape, it is clear from the district court's findings of fact that it also considered and weighed the arresting officer's testimony. In fact, the State acknowledges as much

in its brief in chief when it asserts that the "district court discredited [the officer's] testimony." This Court has previously recognized that when a district court accepts oral testimony in conjunction with documentary evidence, we review its findings of facts under a substantial evidence standard. *See Shearton Dev. Co., v. Town of Chilili Land Grant*, 2003-NMCA-120, ¶ 32, 134 N.M. 444, 78 P.3d 525. Accordingly, because the district court relied on both the videotape and the arresting officer's testimony, we review the factual findings for substantial evidence.

**B.     Reasonable Suspicion**

{7}      "Before a police officer makes a traffic stop, he must have a reasonable suspicion of illegal activity." *State v. Anaya*, 2008-NMCA-020, ¶ 6, 143 N.M. 431, 176 P.3d 1163. Reasonable suspicion must be based upon specific and articulable facts and the reasonable inferences that can be drawn therefrom. *Id.* It is a particularized suspicion, based on the totality of the circumstances, that a specific individual has broken, or is currently breaking, the law. *State v. Hubble*, 2009-NMSC-014, ¶ 8, 146 N.M. 70, 206 P.3d 579. This is an objective test. *Id.* It is not the arresting officer's subjective beliefs that govern the validity of the stop, but the evidence known to the officer in the time leading up to the stop. *Id.* In analyzing reasonable suspicion, we ask whether the facts available to the officer warrant the officer to believe that the appropriate action was undertaken. *Id.* Thus, we find reasonable suspicion, "if the

officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Id.* (internal quotation marks and citation omitted).

{8}	At the suppression hearing, the arresting officer testified that Defendant committed a traffic violation by crossing the double yellow line and that this occurrence was what drew the officer's attention to Defendant's vehicle. The officer recalled that as a result of Defendant failing to maintain his travel lane, crossing the center line multiple times, and periodically swerving within his lane, the officer engaged his lights. Immediately thereafter, Defendant's vehicle completely crossed from the southbound lane of traffic into the northbound lane. At this point, according to the officer's testimony, the officer initiated his siren. However, the video footage is not in accord with the officer's testimony regarding the sequence of events that led up to the traffic stop. In viewing the dash camera footage, we see no indication that Defendant's vehicle markedly exited the northbound lane until after the officer initiated his siren. Thus, the testimony of the officer and the events as recorded by the dash camera are in conflict. As we have recognized, the district court is entitled to resolve any conflicts in evidence, and we will not reweigh evidence on appeal. *See Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12. Accordingly, based on the

footage contained in the video, we determine that there is such evidence that a reasonable mind might accept the findings of the district court that the "videotape [did not] show such erratic driving as would cause a reasonable officer to conduct a traffic stop" and that Defendant "did not appreciably drive in a suspicious or careless manner until the officer engaged his lights and/or siren" to be accurate, thus constituting substantial evidence.

{9}      With regard to the district court's legal conclusions, in looking at the totality of the circumstances through an objective lens, there is no indication that the officer had a "particularized suspicion that [the d]efendant was breaking, or had broken the law." *Hubble*, 2009-NMSC-014, ¶ 35 (alterations, internal quotation marks, and citation omitted).  The specific and articulable facts relied upon by the arresting officer in his testimony are not supported by the recorded documentation. We determine that these events would not lead a reasonable officer to believe that Defendant committed a traffic infraction warranting a vehicle stop. Thus, viewing the facts in the light most favorable to Defendant, we affirm the findings and conclusion, of the district court and agree that the arresting officer had no reasonable suspicion to stop Defendant.

{10}      Because of our ruling, we do not address the State's remaining arguments that the officer's request that Defendant exit the vehicle and the use of a drug dog

expanded the scope of the stop. Nor do we reach the State's contention that the officer's frisk of Defendant was justified or the search of Defendant's pockets was legal. *See State v. Jason L.*, 2000-NMSC-018, ¶ 14, 129 N.M. 119, 2 P.3d 856 ("[A]n investigatory stop must be supported by reasonable suspicion.").

**CONCLUSION**

{11}     For the foregoing reasons, we affirm the findings of the district court.

{12}     **IT IS SO ORDERED.**


_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**


_____
**RODERICK T. KENNEDY, Chief Judge**


_____
**LINDA M. VANZI, Judge**