**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2015-NMCA-013**

**Filing Date: November 18, 2014**

**Docket No. 32,942**

**STATE OF NEW MEXICO,**

> **Plaintiff-Appellant,**

**v.**

**JOSEPH MARTINEZ,**

> **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Judith K. Nakamura, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellant

Bregman & Loman, P.C.
Sam Bregman
Eric Loman
Albuquerque, NM

for Appellee

**OPINION**

**ZAMORA, Judge.**

**{1}** The central issues presented in this case are: (1) whether this Court can consider the State's new argument against suppression of the alleged victim's testimony in light of the procedural posture of the case, and (2) if so, did the district court err in denying the State's motion for reconsideration of the suppression order.

1

## I.     BACKGROUND

### A.     Factual Background

**{2}**     Bernalillo County Sheriff's Deputies were dispatched to Defendant's home in response to an "open-line" static 911 call. The deputies entered the large rural home based on the 911 call and what appeared to be a disheveled room behind an unlocked sliding glass door. They did not find an active emergency but discovered drugs and drug paraphernalia, as well as videos and photographs that appeared to be child pornography. The deputies called the Bernalillo County Sheriff's Office to prepare a search warrant.

**{3}**     In the meantime, Defendant arrived home. He was transported from his home to the sheriff's office in downtown Albuquerque and questioned. Defendant admitted that the drugs in the house were for personal use. He also admitted that he had dozens of pornographic videos, some of which involved him engaging in sexual acts with an underage male.

**{4}**     Based on the observations of the deputies conducting the search and on Defendant's statements, a search warrant was issued permitting the seizure of drugs and drug paraphernalia, as well as videos and photographs containing child pornography from Defendant's residence. Pursuant to the warrant, deputies seized camcorders, videos, photographs, marijuana, and drug paraphernalia.

**{5}**     A review of the seized evidence revealed ten VHS videos, twelve 8 mm videos, four mini DVDs, and twenty-nine Polaroid photographs depicting a minor engaging in sexually explicit conduct. Sheriff's deputies conducted an investigation based on the photographs found in Defendant's home and Defendant's statements, and were able to identify the alleged victim (E.L.). E.L. was interviewed and disclosed sexual abuse that had occurred for eleven years.

**{6}**     Defendant was arrested and indicted by a grand jury on forty-four counts of Criminal Sexual Penetration of a Child; and one count each of Sexual Exploitation of a Child; Possession with Intent to Distribute Marijuana; Possession of Drug Paraphernalia; and Possession of Cocaine. Defendant was also indicted by a federal grand jury on two counts of Production of a Visual Depiction of a Minor Engaged in Sexually Explicit Conduct. The state and federal cases against Defendant proceeded concurrently.

### B.     Procedural Background

**{7}**     After Defendant was indicted in district court, he challenged the legality of the warrantless search of his home and moved to suppress all evidence obtained as a result of the search. After a hearing on Defendant's motion, the district court found that the search of Defendant's home was illegal, and ordered suppression of all physical evidence seized from his home and vehicle, all statements made by Defendant to law enforcement agents, and the testimony of E.L.

2

**{8}** The State appealed the suppression order to this Court. On appeal, the State argued that the warrantless search of Defendant's home was not illegal. The State also argued that even if the search was illegal, Defendant's statements and E.L.'s testimony were sufficiently attenuated from the search to purge the taint of the illegality, and should not be suppressed. This Court proposed to affirm both the illegality of the search and the suppression of the evidence.

**{9}** As to the suppression of E.L.'s testimony, we proposed to affirm because the district court's findings indicated that E.L. was identified and questioned based on evidence and statements of Defendant that followed the illegal search, and because the State did not explain how it proved to the district court that E.L. would have independently contacted police, nor did the State describe an intervening event or attenuation. The State did not oppose the proposed result, however it did request that we clarify whether our affirmance would preclude E.L. from testifying in future proceedings. In our memorandum opinion affirming the suppression order, we clarified that we were not deciding what effect, if any, the suppression order would have on E.L.'s right to testify in any future proceeding. *State v. Martinez*, No. 31,242, mem. op. (N.M. Ct. App. Mar. 28, 2012) (non-precedential).

**{10}** Meanwhile, Defendant pleaded guilty to the charges in the federal indictment. In Defendant's plea agreement with the United States, he admitted that E.L. voluntarily disclosed details of the years of sexual abuse he suffered at the hand of Defendant, and that E.L. was willing to testify about the abuse at trial. The State then moved for reconsideration of the district court's suppression of E.L.'s testimony. The State argued to the district court that when determining whether evidence obtained as the result of an illegal search is sufficiently attenuated from the illegality as to purge the taint and render the testimony admissible, under *United States v. Ceccolini*, 435 U.S. 268 (1978), the live testimony is analyzed differently than other forms of evidence. To support this new argument, the State offered new authority that was not considered in the first appeal. The district court denied the State's motion for reconsideration. This appeal followed.

## II.    DISCUSSION

**{11}** On appeal, the State challenges the district court's order denying its motion to reconsider suppression of E.L.'s testimony, arguing that the district court erroneously focused solely on the question of whether E.L. would have independently come forward to police, prior to the time police searched Defendant's home. We agree with the State's argument.

**{12}** Defendant does not respond to the State's arguments related to the suppression of E.L.'s testimony. Instead, he argues that under the law of the case doctrine, this Court's prior affirmance of the suppression order, which included suppression of E.L.'s testimony, is binding on the remainder of the proceedings in this case, and precludes reconsideration.

3

**A.    The Law of the Case Doctrine Does Not Preclude Reconsideration of the Suppression Order**

**{13}**    Generally, under the law of the case doctrine, "a decision by an appeals court on an issue of law made in one stage of a lawsuit becomes binding on subsequent [district] courts as well as subsequent appeals courts during the course of that litigation." *State ex rel. King v. UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 21, 145 N.M. 769, 205 P.3d 816. However, "[a]pplication of this doctrine is a matter of discretion and is not an inflexible rule of jurisdiction." *State v. House*, 2001-NMCA-011, ¶ 10, 130 N.M. 418, 25 P.3d 257.

**{14}**    In *House*, the defendant appealed his DWI-related and reckless driving-related convictions and the corresponding sentences. *Id.* ¶¶ 1, 5. Our Supreme Court affirmed the convictions and remanded for re-sentencing. *Id.* ¶ 1. The defendant appealed again to this Court, presenting new arguments related to his sentence. *Id.* ¶¶ 1, 10. The state objected, arguing that the law of the case doctrine foreclosed our ability to hear any argument not made on the defendant's first appeal. *Id.* ¶ 10. Finding the state's argument unpersuasive, we concluded:

> [T]he [law of the case] doctrine traditionally applies only where a matter has been *specifically* ruled upon in a prior and final appellate proceeding. . . . Neither this Court, nor our Supreme Court, has passed upon any of the issues *specifically* presented in this appeal, and while it would have been preferable for [the d]efendant to have brought these claims in his prior appeal, the doctrine of law of the case does not preclude our review.

*Id.* (emphasis added) (citations omitted).

**{15}**    Similarly, it could be argued here that the State could have and should have made its *Ceccolini* argument the first time suppression was addressed. It is worth noting that "the [law of the case] doctrine leaves considerable discretion to appellate courts to interpret what, precisely, the law of the case is[.]" *King*, 2009-NMSC-010, ¶ 27. In its motion for reconsideration, the State presented the district court with a new issue not specifically addressed by the previous sitting district court or this Court on Defendant's motion for suppression. We have considered the merits of the parties' arguments within a motion for reconsideration, even where the motions were supported by new evidence, new arguments, or new authority. *See State v. Gamlen*, 2009-NMCA-073, ¶¶ 4-5, 146 N.M. 668, 213 P.3d 818 (permitting the defendant to make new arguments on a motion to reconsider suppression).

**{16}**    In the case before us now, the State first advanced its *Ceccolini* argument in its motion to reconsider suppression. Defendant did not respond to this argument, rather, he argued that the district court was bound by this Court's affirmance in the first appeal. At the hearing on the State's motion for reconsideration, the district court rejected Defendant's assertion that it was bound by our affirmance. We conclude that it was appropriate for the

4

district court to consider the State's motion for reconsideration that was based on new argument and new authority.

**B.      State's Motion to Reconsider Suppression**

{17}     On appeal, the State argues that the district court erred in focusing solely on whether E.L. would have independently contacted police. The district court found that, because the State could not prove that E.L. would have independently contacted police, his testimony was not sufficiently attenuated from the illegal search as to make it admissible. The district court also noted that E.L's willingness to testify was irrelevant. As a result of its erroneous focus, the district court never analyzed the applicability of *Ceccolini* in this case.

{18}     We have not yet deviated from federal precedent as it pertains to the attenuation of illegally obtained evidence as an exception to the exclusionary rule. *State v. Garcia*, 2009-NMSC-046, ¶¶ 14, 23, 147 N.M. 134, 217 P.3d 1032 (following the "fruit of the poisonous tree" and attenuation doctrines set forth in *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) and *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975)); *see also State v. Murry*, 2014-NMCA-021, ¶ 33, 318 P.3d 180 (citing *Wong Sun*, 371 U.S. at 488, for general suppression principles). This Court has not specifically considered whether we will adopt the *Ceccolini* attenuation analysis of witness testimony, and we decline to do so here. *See City of Las Cruces v. El Paso Elec. Co.*, 1998-NMSC-006, ¶ 18, 124 N.M. 640, 954 P.2d 72 ("We avoid rendering advisory opinions."). While we are not deciding the applicability of *Ceccolini*, we are required to analyze it within the context of the State's argument in support of its Motion for Reconsideration and make the determination of whether there was substantial evidence to support the district court's decision.

{19}     Motions to reconsider suppression in criminal cases involve mixed questions of law and fact. *See State v. Hicks*, 2013-NMCA-056, ¶ 5, 300 P.3d 1183, *cert. denied,* 2013-NMCERT-004, 301 P.3d 858; *State v. Eric K.*, 2010-NMCA-040, ¶ 14, 148 N.M. 469, 237 P.3d 771. Factual determinations by the district court are reviewed "under a substantial evidence standard and legal questions [are reviewed] de novo." *Hicks*, 2013-NMCA-056, ¶ 5 (internal quotation marks and citation omitted).

{20}     In *Ceccolini*, the United States Supreme Court included a lengthy discussion of the uniqueness of live witness testimony compared to inanimate evidentiary objects, touching directly on the concerns presented:

> Witnesses are not like guns or documents which remain hidden from view until one turns over a sofa or opens a filing cabinet. Witnesses can, and often do, come forward and offer evidence entirely of their own volition. And evaluated properly, the degree of free will necessary to dissipate the taint will very likely be found more often in the case of live-witness testimony than other kinds of evidence. The time, place and manner of the initial questioning of the witness may be such that any statements are truly the product of

5

> detached reflection and a desire to be cooperative on the part of the witness.
> And the illegality which led to the discovery of the witness very often will
> not play any meaningful part in the witness' willingness to testify.

*Ceccolini*, 435 U.S. at 276-77. The Court went on to state that "[t]he fact that the name of a potential witness is disclosed to police is of no evidentiary significance, per se, since the living witness is an individual human personality whose attributes of will, perception, memory and volition interact to determine what testimony he will give." *Id.* at 277.

**{21}** Given this distinction, the Court held that courts should be cautious to use the exclusionary rule for the testimony of live witnesses, and admonished courts to apply it with circumspection to determine its usefulness in any particular context. The Court was particularly concerned with a situation in which the "exclusion would perpetually disable a witness [who is not a putative defendant] from testifying about relevant and material facts, regardless of how unrelated such testimony might be to the purpose of the originally illegal search or the evidence discovered thereby." *Id.* Under such circumstances, the Court held that "since the cost of excluding live-witness testimony often will be greater, a closer, more direct link between the illegality and that kind of testimony is required." *Id.* at 278. Thus, the significance of the State's request that this Court clarify whether E.L. was precluded from testifying in future proceedings.

**{22}** Applying these principles to the facts of that case, the Court held that the witness's testimony, though causally related to the illegal search, had become sufficiently attenuated because (1) the free will that the witness exhibited made it more likely that she would eventually have come forth on her own, *see id.* at 276-77, 279; (2) the Supreme Court is less willing to exclude live-witness testimony than to exclude inanimate documents or objects, *id.* at 277; (3) other illegally seized evidence was not used in questioning the witness, *id.* at 279; (4) "[s]ubstantial periods of time elapsed between the time of the illegal search and the initial contact with the witness," and "between [the contact with the witness] and the testimony at trial," *id.*; and (5) it did not appear that the officer conducted the illegal search with the intent of seeking out evidence, *id.* at 280.

**{23}** We agree with the State that the district court's focus was erroneous. Under *Ceccolini*, the likelihood that a testifying witness will be discovered through independent, legal means is not determinative of attenuation, but rather is a function of the witness's willingness to testify. *See id.* at 276 ("The greater the willingness of the witness to freely testify, the greater the likelihood that he or she will be discovered by legal means and, concomitantly, the smaller the incentive to conduct an illegal search to discover the witness."). Here, the key considerations in determining attenuation of E.L.'s testimony are: (1) whether E.L. will willingly testify against Defendant; and (2) whether the purpose served by excluding E.L.'s testimony outweighs the cost of forever precluding him from testifying against his abuser.

**{24}** The State had the opportunity to present relevant evidence at the hearing on the

motion for reconsideration in support of its argument of the application of *Ceccolini* and specifically, E.L.'s willingness to testify, but failed to do so. State's counsel provided only information about E.L.'s alleged willingness to testify included as an admission by Defendant, in Defendant's federal plea agreement, that E.L. was prepared to willingly testify about the abuse in federal court as detailed in E.L.'s wife's affidavit. *See also State v. Cochran*, 1991-NMCA-051, ¶ 8, 112 N.M. 190, 812 P.2d 1338 (noting that "argument of counsel is not evidence").

**{25}** Defendant's federal plea agreement was not relevant to show that because E.L. was willing to testify in the federal proceeding he was therefore willing to testify in the state proceeding. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Gonzales*, 2010-NMCA-023, ¶ 4, 147 N.M. 735, 228 P.3d 519 (alteration, internal quotations and citations omitted). Rule 11-401 NMRA (2011) defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." The State failed to tender relevant evidence to show E.L. was also willing to testify in the state court proceedings so that the district court could consider even the first of the *Ceccolini* factors. The State had the opportunity to present E.L.'s testimony, in person or by affidavit, to show his willingness to testify, but chose not to do so. We conclude that the district court appropriately denied the State's motion for reconsideration.

**{26}** Based on the foregoing, we affirm the district court's order denying the State's motion for reconsideration.

**{27}  IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**MICHAEL E. VIGIL, Judge**

7